Appeal No. 21-11215

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

**Starbucks Corporation,**

*Defendant/Appellant,*

v.

**Ariel Torres and Raphyr Lubin,**

*Plaintiffs/Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
CIVIL CASE NO. 8:20-CV-01311-CEH-TGW

---

**BRIEF OF APPELLANT,
STARBUCKS CORPORATION**

---

Sherril M. Colombo, Esq. (Florida Bar No. 948799)
Stefanie Mederos, Esq. (Florida Bar No. 12041)
LITTLER MENDELSON, P.C.
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 400-7500

*Counsel for Appellant*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

In accordance with Fed. R. App. P. 26.1 and CTA11 Rule 26.1-1, the undersigned counsel for Defendant-Appellant, Starbucks Corporation, hereby certifies that the following is an alphabetical list of the trial judge, attorneys, persons, associations of persons, firms, partnerships and corporations with any known interest in the outcome of this appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% of more of the party's stock, and other identifiable legal entities related to a party:

- Colombo, Sherril M., Counsel for Appellant;

- Hill, Brandon J., Counsel for Appellees;

- Honeywell, Charlene Edwards, Judge, U.S. District Court, Middle District of Florida;

- Justice, Chad A., Counsel for Appellees;

- Justice for Justice, LLC, Counsel for Appellees;

- Littler Mendelson, P.C., Counsel for Appellant;

- Lubin, Raphyr, Appellee;

- Mederos, Stefanie M., Counsel for Appellant;

- Starbucks Corporation, Appellant; and

- Torres, Ariel, Appellee.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant[1] requests oral argument as this appeal presents complex issues concerning the enforceability of an arbitration agreement and the District Court's unique analysis in denying enforcement as to the claim asserted by the spouse of a former employee seeking relief under the Consolidated Omnibus Budget Reconciliation Act (COBRA), which claim arose out of the employment benefit to his wife and was derivative of his wife's claim, even though the arbitration agreement was a condition of employment.

---

[1] Defendant-Appellant Starbucks Corporation is referenced in this appeal as "Starbucks" or "Appellant." Appellees, Ariel Torres ("Torres") and Raphyr Lubin ("Lubin"), are referenced herein collectively as "Appellees."

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ………………………..…….C-1

STATEMENT REGARDING ORAL ARGUMENT ……………….……………i

TABLE OF CONTENTS………………………………………………………ii

TABLE OF AUTHORITIES……………………………………………..…..iv

STATEMENT OF JURISDICTION ...…………………………………………1

STATEMENT OF THE ISSUES ………………………………………………2

STATEMENT OF THE CASE …………………………………………....4

    A. Course of Proceedings and Disposition in the Court Below ……..……4

    B. Statement of Facts …………………………………………………..12

        1. Background as to Torres………………………………………12

            a. Torres Signed An Enforceable Arbitration Agreement…12-13

            b. The Challenged COBRA Notice…………………………..13

        2. Background as to Lubin….. …………………………………..13

            a. Lubin's Spouse Signed an Arbitration Agreement………...13

            b. Lubin's Spouse Elected Spouse Coverage Making Lubin a
               Beneficiary Under the Starbucks Plan …………..…13-14

            c. Starbucks Provided the Challenged COBRA Notice as a
               Result of The Termination of Lubin's Spouse …………..14

        3. The Arbitration Agreement…………………….….…………...15

    C. Standard of Review ………………………………………………16

SUMMARY OF THE ARGUMENT …………………………………………17

ARGUMENT ……………………………………………………………..20

   I.  THERE IS A LIBERAL FEDERAL POLICY FAVORING
   ENFORCEMENTOF ARBITRATION AGREEMENTS ………..……......20

   II.  THE DISTRICT COURT ERRED IN FAILING TO ENFORCE THE
   BINDING DELEGATION PROVISION..……………………………....23

   III.  THE DISTRICT COURT ERRED IN CONCLUDING LUBIN'S
   CLAIMS ARE NOT DERIVATIVE OF HIS WIFE'S
   CLAIM……………………………………………………….……..……25

   A. Starbucks Argued That Lubin's Claims Are Derivative Of His
   Wife's Claims…………………………………………………………25

   B. Lubin's Claims Are Purely Derivative of His Wife's Claims…………..29

   IV.  THE DISTRICT COURT ERRED IN CONCLUDING LUBIN
   CANNOT BE BOUND AS A THIRD-PARTY BENEFICIARY SIMPLY
   BECAUSE HE DID NOT SIGN THE AGREEMENT……………………33

   V. THE DISTRICT COURT ERRED IN FINDING LUBIN MAY BE
   ESTOPPED ONLY IF HIS CLAIMS ARE PURELY
   CONTRACTUAL………………………….……………………………36

CONCLUSION ………………………………………………………..…40

CERTIFICATE OF COMPLIANCE …………………………………….…...…..42

CERTIFICATE OF SERVICE …..………………………………...………..43

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Am. Exp. Co. v. Italian Colors Rest.*,
   570 U.S. 228, 233 (2013) ............................................................23

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) .............................................................20

*Bess v. Check Express*,
   294 F.3d 1298 (11th Cir. 2002) ..........................................16

*Bodine v. Cook's Pest Control Inc.*,
   830 F. 3d 1320 (11th Cir. 2016) ..........................................16

*Caley v. Gulfstream Aerospace Corp.*,
   428 F.3d 1359, 1368 (11th Cir.2005) ..............................21

*Cummings v. Washington Mut.*,
   650 F.3d 1386, 1391 (11th Cir. 2011) .............................30

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213, 221 (1985) ..........................................20, 23

*Eckel v. Equitable Life Assur. Soc. of US*,
   1 F.Supp.2d 687 (E.D. Mich. 1998) ................................18, 27, 29, 32

*Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*,
   251 F. 3d 1316, 1322 (11th Cir. 2001) ............................21

*Garcia v. Wachovia Corp.*,
   699 F.3d 1273 (11th Cir. 2012) .........................................16

*Germann v. Age Inst. of Fla., Inc.*,
   912 So. 2d 590, 592 (Fla. 2d DCA 2005 .........................33

*Given v. M&T Bank Corp. (In re Checking Account Overdraft Litig.)*,
674 F.3d 1252, 1255 (11th Cir. 2012) .............................................................25

*Gomez v. Allied Professionals Ins. Co.*,
457 F. Supp. 3d 1351 ................................................ 19, 28, 35, 39-40

*Hellenic Inv. Fund, Inc. v. Det Norske Veritas*,
464 F.3d 514 (11th Cir. 2010) ..........................................................19, 36

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
139 S. Ct. 524, 525 (2019) .................................................................23

*Interpool Ltd. v. Through Transport Mut. Ins. Ass'n Ltd.*,
635 F. Supp. 1503, 1505 (S.D. Fla. 1985 ............................................34

*Jacocks v. Capital Commercial Real Estate Grp., Inc.*,
No. 4D20-1512, 2021 WL 49876 (Fla. 4th DCA, Jan. 6, 2021) .................. 37-38

*Jones v. Waffle House, Inc.*,
866 F.3d 1257 (11th Cir. 2017) ........................................................25

*JPay, Inc. v. Kobel*,
904 F. 3d 923 (11th Cir. 2018) ....................................................16, 20, 23

*Kakawi Yachting, Inc. v. Marlow Marine Sales, Inc.*,
13–cv–1408–T–TBM, 2014 WL 12650701, *8 (M.D. Fla. Oct. 3, 2014) .. 36-37

*Kaspers v. Comcast Corp.*, No. 15-12066, 2015 U.S. App. LEXIS
19843, at *6 (11th Cir. 2015) .......................................................20

*KFC National Management Co. v. Beauregard*,
739 So. 2d 630 (Fla. 5th DCA 1999) ..............................................22

*Kong v. Allied Prof'l Ins. Co.*,
750 F.3d 1295, 1302 (11th Cir. 2014) ...........................................34

*Laizure v. Avante at Leesburg*,
109 So. 3d 752, 762 (Fla. 2013) .................................................. 19, 32, 38-39

*Lambert v. Austin Ind.*,

544 F.3d 1192, 1199 (11th Cir. 2008) ........................................................20, 22

*Martha A. Gottfried, Inc. v. Paulette Koch Real Estate, Inc.*,
    778 So. 2d 1089 (Fla. 4th DCA 2001 ...................................................34

*Martinez v. Carnival Corp.*,
    744 F.3d 1240, 1246 (11th Cir. 2014) ...............................................23

*Matthews v. Ultimate Sports Bar, LLC*,
    621 F. App'x 569, 571 (11th Cir. 2015) ............................................20

*Mendez v. Hampton Court Nursing Ctr., LLC*,
    203 So. 3d 146(Fla. 2016) .............................................18-19, 33-35

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1, 24 (1983) ......................................................... 21-22

*Parnell v. CashCall, Inc.*,
    804 F.3d 1142, 1146 (11th Cir. 2015) ..................................21, 23, 25

*Ray v. NPRTO Fla., LLC*, 322 F. Supp. 3d 1261, 1263 (M.D. Fla.
    2017), *aff'd*, 743 F. App'x 955 (11th Cir. 2018) ................................38

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63, 68-70 (2010) ...............................................23, 25

*Reunion W. Dev. Partners, LLLP v. Guimaraes*,
    221 So. 3d 1278, 1280 (Fla. 5th DCA 2017) ....................................24

*Scott v. Suncoast Beverage Sales, Ltd.*,
    295 F.3d 1223, 1230 (11th Cir. 2002) ............................................30

*Sears Authorized Termite & Pest Control v. Sullivan*,
    816 So. 2d 603 (Fla. 2002) .............................................34

*Sliwa v. Bright House Networks, LLC*,
    333 F.R.D. 255, 281 (M.D. Fla. 2019.................................................35

*Smith v. Beverly Hills Clubs Apts., LLC*, No. 1:15cv23450, 2016 WL
    344975 (S.D. Fla. Jan. 28, 2016) .......................................................20

*Solymar Invs., Ltd. v. Banco Santander, S.A.*,
672 F.3d 981, 988 (11th Cir. 2012) ....................................................................21

*Spirit Airlines, Inc. v. Maizes*,
899 F. 3d 1230 (11th Cir. 2018) ........................................................................20

*Teel v. Aaron's, Inc.*,
2015 WL 1346846 (M.D. Fla. Mar. 24, 2015 ...............................................26, 40

*Terminix Int'l Co., LP v. Ponzio*,
693 So. 2d 104, 109 (Fla. 5th DCA 1997 ............................................................34

*Wright v. Hanna Steel Corp.*,
270 F.3d 1336, 1344 (11th Cir. 2001) .......................................................18, 31, 33

**Statutes**

9 U.S.C.A. § 16 .......................................................................................................1

28 U.S.C.A. § 1331 .................................................................................................1

29 U.S.C.A. § 1132(c)(1) ............................................................................6, 31, 36

29 U.S.C.A. § 1161 ...............................................................................................30

29 U.S.C.A. § 1166 .................................................................................. 11-12, 29

29 U.S.C.A. § 1167 ..........................................................................................30, 38

29 U.S.C.A. § 1332 .................................................................................................1

20 C.F.R. § 2575.502c-1 .........................................................................................6

29 C.F.R. § 2590.606-4 ........................................................................... 11-12, 29

Consolidated Omnibus Budget Reconciliation Act of 1985...........................passim

Employee Retirement Income Security Act of 1974 ...............................................4

Federal Arbitration Act…………………………………………………………...passim

**Other Authorities**

Local Rules for the Middle District of Florida ...........................................................8

## <u>STATEMENT OF JURISDICTION</u>

This is an appeal from a March 15, 2021 Order of the United States District Court for the Middle District of Florida denying, in part, Appellant's Second Motion and Incorporated Memorandum of Law to Compel Arbitration of Plaintiffs' Individual Claims and Dismiss Plaintiffs' Class Action Claims. The District Court had subject matter jurisdiction over the case pursuant to 29 U.S.C. §§ 1332(e) and (f), and also pursuant to 28 U.S.C.A. § 1331 (West). This Court has jurisdiction over the appeal pursuant to the Federal Arbitration Act, 9 U.S.C.A. § 16(a)(1) (West). The Notice of Appeal was timely filed on April 9, 2021.

## STATEMENT OF THE ISSUES

1.      Whether the District Court erred in failing to enforce Starbucks' standard Arbitration Agreement against the spouse, Lubin, of former employee, Louis, who signed an arbitration agreement as a condition of employment, even though the Appellees agreed that the same claims of former employee, Torres, would be subject to arbitration.

2.      Whether enforceability of the Arbitration Agreement is an issue for the arbitrator and not the District Court.

3.      Whether the District Court erred in concluding that Lubin's claim is not barred as derivative of his wife's claim which the parties and District Court agreed must be arbitrated.

4.      Whether the District Court erred by finding Starbucks waived the argument that Lubin's claim is derivative of his wife's claim which must be arbitrated.

5.      Whether the District Court erred by finding Lubin's claim under COBRA is not purely derivative of his wife's claim under COBRA and/or his wife's employment at Starbucks.

6.      Whether the District Court erred by finding that Lubin cannot be bound to the Arbitration Agreement as a third-party beneficiary simply because he did not sign the Arbitration Agreement.

7.    Whether the District Court erred by finding Lubin may be estopped from avoiding the Arbitration Agreement only if his claim is purely contractual.

## STATEMENT OF THE CASE

This is an appeal from a March 15, 2021 Order (the "Order"), entered by the Honorable Charlene Edwards Honeywell in the United States District Court for the Middle District of Florida in Civil Action No. 8:20-cv-01311-CEH-TGW, denying Appellant's Second Motion and Incorporated Memorandum of Law to Compel Arbitration of Plaintiffs' Individual Claims and Dismiss Plaintiffs' Class Action Claims (App. p. 89).  The District Court held that the employment Arbitration Agreement, entered into by Lubin's wife, was enforceable as to the other named plaintiff and former employee, Torres, for notice under the COBRA, but not as to Lubin's claims for notice under COBRA as a beneficiary on his wife's group health plan provided by Starbucks. The District Court made that finding based on its conclusion that Lubin asserts his own independent statutory rights under COBRA so he should not be bound by the Arbitration Agreement which he did not sign.

### A.    Course of Proceedings and Disposition in the Court Below

A former employee who signed an arbitration agreement at the commencement of his employment with Starbucks, Torres, filed a class action complaint in the United States District Court for the Middle District of Florida on June 8, 2020, against his former employer, Starbucks, for alleged failure to provide appropriate health insurance notice pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by COBRA.  (App. p. 11). Torres

asserted a single cause of action on behalf of himself and on behalf of "**All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by Defendant during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant's records, and did not elect continuation coverage**." *Id*., at ¶ 53 (emphasis in original).

On July 7, 2020, Starbucks filed its initial Motion to Compel Arbitration of Plaintiff's Individual Claims and Dismiss Plaintiff's Class Action Claim and Incorporated Memorandum of Law ("Initial Motion to Compel Arbitration"). (App. p. 36 ). Torres did not file a response to Starbucks' Initial Motion to Compel Arbitration, but instead filed a First Amended Class Action Complaint ("First Amended Complaint"). The First Amended Complaint added Lubin as a Named Plaintiff, asserting that Lubin's wife worked for Starbucks and was covered under the Starbucks Corporation Welfare Benefits Plan (the "Starbucks Plan"). (App. p. 75, ¶ 13).

In the First Amended Complaint, Appellees asserted the same sole cause of action on behalf of themselves and the same putative class asserted in the original complaint. (*See* App. p. 11; App. p. 75). Appellees allege that: (1) Torres and Lubin's wife were Starbucks employees (App. p. 75, ¶ ¶34, 39); (2) Torres was entitled to COBRA notice as a result of his termination (App. p. 75, ¶¶ 34-38); (3) Lubin was entitled to COBRA notice as a result of his wife's termination of employment

because he was a qualified beneficiary due to his wife's participation in the Starbucks Plan (*id.*, ¶¶ 39-42); (4) Starbucks failed to adequately provide COBRA notice to Torres and Lubin (*id.*, ¶¶ 34-55); and (5) Lubin's COBRA notice claim relates to the same COBRA notice that Torres and other former Starbucks employees allege is deficient (*see id.*, ¶ 59; *see also,* App. p. 163, pp. 170, 178). Appellees alleged that, due to the form of the COBRA notices they received "Plaintiffs were unable to elect COBRA." (*Id.*, ¶ 33). Appellees brought the action on behalf of the following:

> **All participants and beneficiaries in the Starbucks Health Plan who were sent a COBRA notice in the form provided to Plaintiffs, during the applicable statute of limitations period as a result of a qualifying event, as determined by Starbucks' records, who did not elect continuation coverage, and who did not sign or opted out of the Starbucks arbitration agreement.**

(App. p. 75, p. 83) (emphasis in original). Appellees sought relief including statutory penalties under 29 U.S.C.A. § 1132(c)(1) (West), as amended by 20 C.F.R. § 2575.502c-1, for each putative class member. (App. p. 75, p. 87).

On August 4, 2020, Starbucks filed its Second Motion and Incorporated Memorandum of Law to Compel Arbitration of Plaintiffs' Individual Claims and Dismiss Plaintiffs' Class Action Claim ("Second Motion to Compel Arbitration"). (App. p. 89). Starbucks argued, in relevant part, that Torres and Lubin's wife accepted employment at Starbucks on the express condition that they agreed to (1) submit any disputes related to their employment, including statutory claims and

those concerning any element of compensation, to arbitration, and (2) would not participate in a class action. (App. p. 89). Starbucks further argued that Lubin's wife elected spouse coverage under the Starbucks Plan and enrolled Lubin as a beneficiary under the Starbucks Plan. (*Id*.). Starbucks argued that Appellees should be immediately compelled to arbitration on the ground that the Arbitration Agreement contains a delegation clause which delegates all gateway issues to the arbitrator. (*Id*., at 10, n. 8). Starbucks also argued that Lubin's claims "derive wholly from," "relate to" and have a "significant relationship" with his wife's employment, which could not have arisen but for the agreement to the Arbitration Agreement, and his claims arose solely due to his status as a beneficiary under the Starbucks Plan, which it provided to Lubin's wife as compensation for her employment. (*Id*. at 91, 99-102). Starbucks argued that Lubin is estopped from denying the Arbitration Agreement because his COBRA claims presume the existence of his wife's employment at Starbucks and the arbitration clause covers his dispute. (*Id*. at 103-105). Starbucks also argued that Lubin is a third-party beneficiary of the Arbitration Agreement and received the benefit of his wife's employment via the Starbucks Plan, which was the very subject of his COBRA claim. (*Id*. at 105-106). Starbucks argued that the "qualifying event" triggering Lubin's alleged entitlement to COBRA notice was the termination of his wife's employment and cited to certain paragraphs

in the First Amended Complaint in which Plaintiff acknowledges such is the case. App. p. 89, at 103).

Appellees filed their Response to Defendants' Second Motion to Compel Arbitration and Dismiss the Action ("Plaintiffs' Opposition") on August 25, 2020. (App. p. 163). In Plaintiffs' Opposition, Appellees conceded that Torres was provided with, signed, and agreed to the terms of the Arbitration Agreement and acknowledged Torres' agreement to arbitrate his COBRA claim individually as required by the Arbitration Agreement. (*Id*.). Appellees also conceded that Lubin's wife was provided with, signed, and agreed to the terms of the Arbitration Agreement. (*See generally, id*.). However, Appellees argued that Lubin is not bound to the Arbitration Agreement because he did not sign the Arbitration Agreement and thus did not agree to arbitrate his COBRA claim. (*Id*.). In doing so, Appellees argued that Plaintiff's COBRA claim did not relate to his wife's employment with Starbucks. (*Id*., at 171, 173, 175). Appellees argued that the delegation provisions in the Arbitration Agreement are unenforceable. (*Id*., at 177-178). [2]

On December 21, 2020, the District Court held a hearing via Zoom during which it heard argument from the parties on Starbucks' Second Motion to Compel Arbitration. (*See* App. p. 183; Transcript of Zoom Videoconference Motion

---

[2] The Local Rules for the Middle District of Florida do not permit the moving party to submit a reply brief absent leave of court.

Proceedings before the Honorable Charlene E. Honeywell ["Tr."]). At the hearing, Judge Honeywell commenced by stating that the purpose of the hearing was to discuss Mr. Lubin who "was never employed by Starbucks and did not sign an arbitration agreement." Given that introduction to the issues for consideration at the hearing, counsel for Starbucks summarized its argument that Lubin stood in the shoes of his wife as the participant in the Starbucks Plan in asserting his COBRA claim. (App. p. 203-204). Counsel for Starbucks continued to argue that Lubin was bound to arbitrate "under an estoppel, third-party beneficiary **slash derivative type** of context." (App. p.194:13-17 (emphasis added)). Counsel for Starbucks elaborated:

> [N]ot only is Mr. Lubin a third-party beneficiary, his claims are **derivative**. We go back to … his wife's claims. …[H]e shouldn't be allowed to do something that she cannot. He essentially steps in her shoes. That's the nature of the **derivative** or third-party beneficiary context. [App. p. 199:10-15.]
> By seeking such benefits from the policy's provision, plaintiff is estopped from avoiding the burdens of the same policy. And the … claim is not separate and distinct, but it's **derivative** of a potential claim. [*Id*., 200:5-8.]
> [H]is claims are **derivative** of that of his wife. [*Id*., 200:22-23.]
> (Emphasis added).

At that time, the District Court explicitly asked that Appellees' counsel respond to Starbucks' arguments that Lubin's claims are derivative, stating "So basically they are saying – and they use derivative in Florida. …Why don't you respond to that[?]" (App. p.208:13-18). In response, counsel for Appellees argued that a third-party

beneficiary theory only allows a noncontracting party to enforce a contract against the contracting party and Starbucks did not ask Lubin to sign an arbitration agreement. (App. p.208:23-27:19).

Following argument, the District Court acknowledged that Lubin's wife signed the Arbitration Agreement (App. p., 212:5-12) and granted the Second Motion to Compel Arbitration as to Torres, deferring ruling as to Lubin. (App. p. 183). The District Court invited Starbucks to submit supplemental briefing to support the Second Motion to Compel Arbitration as to Lubin's derivative status, and invited Plaintiffs to respond to Starbucks' supplemental briefing. (App. p. 212:5-12).

On December 31, 2020, Starbucks filed its Supplemental Brief in Support of Second Motion to Compel Arbitration of Plaintiffs' Individual Claims and Dismiss Plaintiffs' Class Action Claims ("Starbucks' Supplemental Brief"). (App. p. 216). Starbucks asserted that Lubin's standing depended on his eligibility to bring a claim based on a COBRA notice that could only arise from his status as a beneficiary (derivative of his wife's status as a participant) of the Starbucks Plan. (*Id*.) Starbucks argued that Lubin's status as a nonsignatory did not preclude enforcement of the Arbitration Agreement and that estoppel and third-party beneficiary theories compel nonsignatories such as Lubin to arbitrate. (*Id*. at 218). Starbucks further argued that, because Lubin was only entitled to assert his claim as a result of his wife's status as

a former employee of Starbucks, his claim was derivative of his wife's claim and the direct benefit estoppel theory and third-party beneficiary theory precluded him from avoiding arbitration. (*Id*. at 218-219 n. 5, and 2019-220). Significantly, Starbucks did not argue that a derivative theory is a third theory upon which it could compel arbitration but, rather, that the derivative nature of his claims was the reason why arbitration should be compelled based on third party beneficiary and estoppel theories. (*See id*. generally).

On January 1, 2021, Appellees filed their Reply to Defendant's Supplemental Brief Related to Defendant's Second Motion to Compel Arbitration ("Reply to Supplemental Brief"). (App. p. 224). Appellees argued that Lubin was not bound to arbitrate his COBRA notice claim because he did not sign the Arbitration Agreement or agree to arbitrate. (*Id*.) Appellees argued that the Court should ignore the arguments Starbucks raised regarding the derivative nature of Lubin's claims because they were not raised in the Second Motion to Compel Arbitration. (*Id*., at 5). Appellees further argued that Lubin's claims are premised on "his own independent statutory rights under 29 U.S.C.A. § 1166(a) (West) and 29 C.F.R. § 2590.606-4" which "have nothing to do with his wife." (*Id*., at 229). On January 20, 2021, Appellees filed a Notice of Filing Supplemental Authority in Support of Opposition to Defendant's Motion to Compel Arbitration, attaching an order from

*Jacocks v. Cap. Com. Real Est. Grp., Inc.*, 310 So. 3d 71 (Fla. Dist. Ct. App. 2021). (App. p. 231).

On March 15, 2021, the District Court entered an Order granting Appellant's Second Motion to Compel Arbitration as to Torres and denying the Motion as to Lubin. (App. p. 236). The District Court found that Starbucks waived the argument that Lubin's claims should be arbitrated because they are derivative of his wife's claims. (*Id*. at 248). The Court also found that Lubin's COBRA notice claims are not derivative of his wife's claims because he is a "qualified beneficiary" and his claims are independent statutory rights under 29 U.S.C.A. § 1166(a) and 29 C.F.R. § 2590.606-4. (App. p. 236 at 249). The District Court concluded that under Florida law governing third-party beneficiaries, while a nonsignatory may compel a signatory to arbitration, a signatory cannot compel a nonsignatory to arbitration. (*Id*., at 247). Finally, the District Court concluded that Lubin's claims are not subject to estoppel because his claims are not of a contractual nature. (*Id*., at 246).

On April 9, 2021, Appellant timely filed its Notice of Appeal to this Court.

**B.    Statement of Facts**

**1.    Background as to Torres**

**a.    Torres Signed An Enforceable Arbitration Agreement**

In about April 2015, Torres, began employment with Starbucks after being provided comprehensive notice that acceptance of Starbucks' Arbitration

Agreement was a condition of employment and after Torres signed the Arbitration Agreement. (App. pp. 89 at 89--95; App. p. 89 at ¶¶ 4, 9, 13-18, Exs. 1-A to 1-I). Due to a brief gap in his employment with Starbucks, Torres acknowledged the Arbitration Agreement a second time in October 2015. (*Id.*).

### b.    The Challenged COBRA Notice

Torres was separated from employment on March 23, 2020 as a result of job abandonment. (App. p. 89 at ¶¶ 17-19). Torres claims that Starbucks provided the alleged deficient COBRA notice upon the occurrence of a "qualifying event" as defined by COBRA, with the qualifying event being his employment termination. (App. p 75, ¶¶ 20-29, 34-38).

### 2.    Background as to Lubin

### a.    Lubin's Spouse Signed An Enforceable Arbitration Agreement

In about April 2018, Lubin's wife, Louisdiana Louis ("Louis"), began employment with Starbucks after being provided comprehensive notice that acceptance of Starbucks' Arbitration Agreement was a condition of employment and after Louis signed the Arbitration Agreement. (App. pp. 89 at 89-95; App. p. 89 at ¶¶ 4,7, 11-21[3], Exs. 2-A to 2-G).

### b.    Lubin's Spouse Elected Spouse Coverage Making Lubin a Beneficiary Under the Starbucks Plan

---

[3] There is an error in the numbering sequence of the paragraphs in App. p. 89 such that there are two sets of paragraphs numbered 11 to 15 (*i.e.*, once the numbering

As part of her onboarding, Louis also signed an acknowledgment of Starbucks' Partner Guide – U.S. Store Edition (2017). (App. p. 89 at ¶ 17 and Ex. 2-H). The Guide notified Louis that Starbucks required arbitration as a condition of employment and a copy of the Agreement was provided to her during onboarding. (*Id.*). The Guide also summarized benefits that Starbucks provides to its employees, including benefits provided under the Starbucks Plan. (*Id.*). In late 2018, Louis elected to receive compensation from Starbucks in the form of certain spousal benefits for Lubin under Starbucks Plan. (App. p. 89 at ¶ 19).

### b. Starbucks Provided the Challenged COBRA Notice as a Result Of The Termination Of Lubin's Spouse

Louis was separated from employment on January 23, 2019 as a result of job abandonment. (App. p. 89 at ¶ 20). Lubin claims that Starbucks provided the alleged deficient COBRA notice upon the occurrence of a "qualifying event" as defined by COBRA, with the qualifying event being the termination of the employment of Louis. (App. p. 75, ¶¶ 20-29, 38, 42).

---

gets to 15 the first time, the next paragraph is mistakenly numbered "11" when it should have been numbered "16"). Both sets of these paragraphs 11 to 15 are relevant and intended to be referenced herein.

### 3.    The Arbitration Agreement

The Arbitration Agreement accepted and signed by Torres and Louis provided, in relevant part, as follows:

> Starbucks and I agree to use binding individual arbitration to resolve any "Covered Claims" …. **"Covered Claims" are those brought under any statute…relating to my employment, including those concerning any element of compensation … or termination of my employment.**
>
> **Except as provided herein, I understand and agree that arbitration is the only forum for resolving Covered Claims, and that both Starbucks and I waive the right to a trial before a judge or jury in federal or state court.** The Arbitrator shall have the authority to award the same damages and other relief that would have been available in court pursuant to applicable law.

(App. p. 89, ¶ 14 and Ex. 1-H; 18-2, ¶ 14 and Ex. 2-E) (emphasis added). The Arbitration Agreement also provided that "Covered Claims will be arbitrated only on an individual basis," and that the employee would be "waiv[ing] the right to participate in or receive money or any other relief from any class, collective, consolidated, or representative proceeding." (App. p .89, ¶15, Ex. 1-H; 18-2, Ex. 2-E). Further, pursuant to the Arbitration Agreement, the arbitrator could not "combine more than one individual's claim or claims into a single case, or arbitrate any form of a class … proceeding." (*Id.*). The Arbitration Agreement also contained a delegation provision:

> Except as provided below, Starbucks and I agree that **the Arbitrator – and not a court or agency – shall have exclusive authority to resolve any dispute** regarding the formation, interpretation, **applicability**,

enforceability, or implementation of this Agreement, including any claim that all or part of this Agreement is void or voidable.

(App. p. 89, Ex. 1-H; 18-2, Ex. 2-E). (emphasis added). The Arbitration Agreement also incorporated the National Rules for the Resolution of Employment Disputes (or successor rules) of the American Arbitration Association ("AAA"). (App. p .89, Ex. 1-H; 18-2, Ex. 2-E). The AAA Employment Arbitration Rules and Mediation Procedures state:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

AAA Rules, at § 6.

### C.    Standard of Review

This Court reviews *de novo* a district court's order denying a motion to dismiss and compel arbitration. *Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230, 1232 (11th Cir. 2018); *Bodine v. Cook's Pest Control Inc.*, 830 F.3d 1320, 1324 (11th Cir. 2016); *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1277 (11th Cir. 2012); *Bess v. Check Express*, 294 F.3d 1298, 1302 (11th Cir. 2002).  The Court also reviews *de novo* the district court's interpretation of an arbitration clause." *JPay, Inc. v. Kobel*, 904 F.3d 923, 928 (11th Cir. 2018) (citation omitted).

## SUMMARY OF THE ARGUMENT

This appeal concerns the single question of whether a spouse of an employee can bring a COBRA notice lawsuit, and avoid arbitration of those claims, when his spouse – who signed the subject arbitration agreement with her former employer (Starbucks) – would nonetheless be required to proceed on identical claims in arbitration. The District Court's ruling that the spouse can avoid arbitration opens up doors for those who have not signed an arbitration agreement – and whose claims are simply derivative of an employee who did sign the arbitration agreements – to skirt enforceability of the arbitration agreement. The District Court erred when it denied Appellants' Motion to Compel Arbitration as to Lubin.

First, the District Court erred in not compelling the parties to arbitration for the arbitrator to decide the issue of Starbucks' ability to enforce the Arbitration Agreement against Lubin. The delegation clause in the Arbitration Agreement stated, and Starbucks argued, that issues of enforceability of the Arbitration Agreement should have been delegated to the arbitrator. Yet, the District Court disregarded that delegation provision when ruling that Lubin's claims should not be compelled to arbitration.

Second, the District Court erred in finding that Lubin's COBRA notice claims are not derivative of his wife's COBRA notice claim. The District Court's finding that Lubin's claims are not derivative of his wife's claim constitutes reversible error.

17

It also creates conflict between courts given the prior ruling by the United States District Court for the Eastern District of Michigan that a COBRA claim filed by a spouse of an employee is derivative of the employee's claim in *Eckel v. Equitable Life Assur. Soc. of the U.S.*, 1 F. Supp. 2d 687, 687–88 (E.D. Mich. 1998). The District Court's conclusion stems from its incorrect view that a "derivative theory" is a third doctrine, separate from the third-party beneficiary and estoppel doctrines. Contrary to that conclusion, a "derivative theory" is subsumed within the larger framework of the two separate third-party beneficiary and estoppel doctrines. It also disregards that the statutory penalties Lubin seeks are only available to his wife. *See Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1344 (11th Cir. 2001) (statutory penalties are only available to plan participant). The conclusion that the derivative theory was different than third-party beneficiary and estoppel doctrines also resulted in an erroneous finding that Starbucks waived the derivative argument.

Third, the District Court was also incorrect in finding that the doctrine of third-party beneficiary can never be used by a signatory to compel a non-signatory to arbitration. The District Court read the decision in *Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 148 (Fla. 2016) as standing for the proposition that Florida courts will never enforce an arbitration against a non-contracting party, even though authoritative cases prior to *Mendez* clearly held third-party beneficiaries who

are nonsignatories may be bound to arbitrate. The District Court's reading of *Mendez* constitutes reversible error.

Fourth, the District Court wrongly concluded that a nonsignatory may be estopped from asserting a claim only if the claim is purely contractual. The Eleventh Circuit has adopted the direct benefit estoppel doctrine. *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006). Further, Florida recognizes that a party may be estopped from repudiating an arbitration agreement if his claim is derivative of the signing party's claim or has a significant relationship with the agreement to arbitrate. *Gomez v. Allied Pros. Ins. Co.*, 457 F. Supp. 3d 1351, 1360 (S.D. Fla. 2020); *Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752, 762 (Fla. 2013). Here, Lubin should be estopped from repudiating the Arbitration Agreement that governs his wife's employment and her COBRA claim, while at the same time asserting his claim based on an entitlement to COBRA notice arising from her employment, participation in the Starbucks Plan, and termination of employment. The District Court's rejection of direct benefit estoppel and narrow construction of equitable estoppel to only contractual claims arising directly from the contract constitutes reversible error.

In sum, the District Court committed reversible error *de novo* in refusing to enforce Starbucks' Arbitration Agreement as to Lubin's claims in several ways, and the Order denying the Second Motion and Incorporated Memorandum of Law to

Compel Arbitration of Plaintiffs' Individual Claims and Dismiss Plaintiffs' Class Action Claims should be reversed.

## ARGUMENT

## I.    THERE IS A LIBERAL FEDERAL POLICY FAVORING ENFORCEMENT OF ARBITRATION AGREEMENTS

"Where the parties have agreed to arbitrate their dispute, the job of the courts – indeed, the obligation – is to enforce that agreement." *JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018) (citation omitted).  Because of the liberal policy in favor of arbitration, the Supreme Court has instructed courts to "rigorously enforce" agreements to arbitrate.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985); *see Matthews v. Ultimate Sports Bar, LLC*, 621 F. App'x 569, 571 (11th Cir. 2015) (same).  Accordingly, courts strictly enforce arbitration agreements, including employment arbitration agreements.  *See, e.g., Lambert v. Austin Ind.*, 544 F.3d 1192, 1199 (11th Cir. 2008) (enforcing arbitration provision in the employment context); *Smith v. Beverly Hills Club Apartments, LLC*, No. 1:15-CV-23450-KMM, 2016 WL 344975 (S.D. Fla. Jan. 28, 2016) (same).

Here, the Arbitration Agreement is governed by the Federal Arbitration Act ("FAA").  "'The principal purpose of the [FAA] is to ensure private arbitration agreements are enforced according to their terms.'" *Kaspers v. Comcast Corp.*, No. 15-12066, 2015 U.S. App. LEXIS 19843, at *6 (11th Cir. 2015) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 179 L. Ed. 2d 742

(2011)). When interpreting arbitration agreements under the FAA, federal courts exercise an overwhelming presumption in favor of arbitration. *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015). The FAA requires federal courts to place arbitration clauses "on equal footing with other contracts." *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 988 (11th Cir. 2012) (citations omitted). Still, arbitration clauses are interpreted broadly so that "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Id.* (citations and quotation omitted).

While "[f]ederal law establishes the enforceability of arbitration agreements, … state law governs the interpretation and formation of such agreements." *Emps. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citations omitted); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) (holding that "in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts"). That said, the "federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005)

(citations omitted).[4] A party seeking to compel arbitration under the FAA must demonstrate that "(a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citations omitted). A party may not avoid arbitration simply by adding a non-signatory to the litigation as "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 20.

The District Court ignored the strong presumption in favor of arbitration even when applying state law and failed to rigorously enforce the Arbitration Agreement at issue, instead permitting Lubin to substantively avoid his wife's agreement to arbitrate and class action waiver by becoming a party to the litigation without his wife. To adopt the District Court's reasoning gives employees a viable road map to skirt enforcement of employment arbitration agreements (and possibly other types of arbitration agreements) by simply asserting litigation through the spouse. That is, employees could simply add their spouse to litigation against their employer to assert claims for the derivative benefits provided to the employee's spouse. This type of

---

[4] Florida likewise favors arbitration as a matter of public policy. *KFC Nat. Mgmt. Co. v. Beauregard*, 739 So. 2d 630 (Fla. Dist. Ct. App. 1999).

result guts the entire federal liberal policy of favoring arbitration and "rigorously" enforcing arbitration agreements "according to their terms." *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013) (citing *Dean Witter Reynolds, Inc.*, 470 U.S. at 221). It also paves the way for contradictory results in claims where the employee has signed an arbitration agreement and the beneficiaries have not, although the claims derive through the employee.

## II.   THE DISTRICT COURT ERRED IN FAILING TO ENFORCE THE BINDING DELEGATION PROVISION

The United States Supreme Court and the Eleventh Circuit recognize that "parties may agree to commit even threshold determinations to an arbitrator, such as whether an arbitration agreement is enforceable." *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–70, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010)). These threshold issues can also include "whether the parties have agreed to arbitrate" and "whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc.*, 561 U.S. at 69; *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1246 (11th Cir. 2014). When an arbitration agreement contains terms that delegate those decisions to the arbitrator, a district court has no authority to consider issues of arbitrability. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 525, 202 L. Ed. 2d 480 (2019). *See also, JPay, Inc. v. Kobel*, 904 F.3d 923, 936 (11th Cir. 2018) (finding that the incorporation of

the AAA Rules was evidence of a "clear and unmistakable intent to delegate questions of arbitrability to the arbitrator"); *Reunion W. Dev. Partners, LLLP v. Guimaraes*, 221 So. 3d 1278, 1280 (Fla. Dist. Ct. App. 2017) (same). Here, the Arbitration Agreement contains a delegation provision, pursuant to which the parties agreed to specifically delegate questions of enforceability and applicability to the arbitrator:

> Except as provided below, Starbucks and I agree that **the Arbitrator – and not a court or agency – shall have exclusive authority to resolve any dispute** regarding the formation, interpretation, **applicability**, enforceability, or implementation of this Agreement, including any claim that all or part of this Agreement is void or voidable.

(App. p. 89, Ex. 2-E) (emphasis added). The Arbitration Agreement also incorporated the National Rules for the Resolution of Employment Disputes (or successor rules) of the AAA. (App. p. 89, Ex. 2-E). The AAA Employment Arbitration Rules and Mediation Procedures state:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

AAA Empl. Rules, at § 6. Appellant argued that the delegation provision in its Motion required that the District Court immediately compel the action to arbitration. (App. p. 89 p. 98, FN 8). The District Court did not address that part of Appellant's argument when it denied Appellant's Second Motion to Compel.

Both the Supreme Court and the Eleventh Circuit have repeatedly concluded that language such as the delegation clause in the Arbitration Agreement is sufficiently clear and unmistakable evidence that the parties intended to arbitrate questions of arbitrability. *Rent-A-Center, West, Inc.*, 561 U.S. at 68; *Parnell*, 804 F.3d at 1147–48; *Given v. M&T Bank Corp. (In re Checking Account Overdraft Litig.)*, 674 F.3d 1252, 1255 (11th Cir. 2012); *Jones v. Waffle House, Inc.*, 866 F.3d 1257 (11th Cir. 2017). The Arbitration Agreement plainly covers the dispute at issue, and it should have been compelled to arbitration.

## III. THE DISTRICT COURT ERRED IN CONCLUDING LUBIN'S CLAIMS ARE NOT DERIVATIVE OF HIS WIFE'S CLAIM

### A. Starbucks Argued That Lubin's Claims Are Derivative Of His Wife's Claims

Starbucks' argument was and has always been that Plaintiffs should be compelled to arbitration based on the third-party beneficiary and estoppel theories. The derivative theory is subsumed within those third-party beneficiary and estoppel theories.

In its Second Motion to Compel, Starbucks repeatedly argued that Lubin's claims were derivative of his spouse's claims. (*See* App. p. 89, at p. 91 ("Lubin's claims **derive wholly** from his spouse's employment with Starbucks, Lubin is likewise bound to that agreement to arbitrate"), 11 ("Lubin's claims based on alleged defective COBRA notice **derive wholly** from Louis' employment with Starbucks"),

and 15-17 (discussing *Teel v. Aaron's, Inc.*, No. 3:14-CV-640-J-32PDB, 2015 WL 1346846 (M.D. Fla. Mar. 24, 2015) at length and stating that Lubin's claims arise "solely due to his status as a beneficiary under the Vision Plan that Starbucks provided to his spouse (Louis) as compensation for her employment") (emphasis added)). At the hearing on its Motion, counsel for Starbucks continued to argue that Lubin was bound to arbitrate "under an estoppel, third-party beneficiary **slash derivative type** of context." (Tr., 12:13-17 (emphasis added)). Counsel for Starbucks elaborated:

> [N]ot only is Mr. Lubin a third-party beneficiary, his claims are **derivative**. We go back to … his wife's claims. …[H]e shouldn't be allowed to do something that she cannot. He essentially steps in her shoes. That's the nature of the **derivative** or third-party beneficiary context. [Tr., 17:10-15.]

> By seeking such benefits from the policy's provision, plaintiff is estopped from avoiding the burdens of the same policy. And the … claim is not separate and distinct, but it's **derivative** of a potential claim. [*Id.*, 18:5-8.]

> [H]is claims are **derivative** of that of his wife. [*Id.*, 18:22-23.]

(Emphasis added). At that time, the District Court explicitly asked that Appellee's counsel respond to Starbucks' arguments that Lubin's claims are derivative, stating "So basically they are saying – and they use derivative in Florida. …Why don't you respond to that[?]" (Tr. 26:13-18). In response, counsel for Appellees did not assert that Starbucks had waived a derivative argument or that a derivative argument is different than third-party beneficiary and estoppel theories. (Tr., 26:23-27:19).

Rather, Appellees' counsel argued that a third-party beneficiary theory only allows a noncontracting party to enforce a contract against the contracting party and Starbucks did not ask Lubin to sign an arbitration agreement. (Tr., 26:23-27:19). Despite that, in the Order denying arbitration as to Lubin, the District Court incorrectly analyzed the "derivative" argument as a third category separate from the third-party beneficiary and estoppel doctrines, rather than as encompassing the third-party beneficiary and estoppel theories. (App. p. 236, p. 248-249). Since the District Court incorrectly determined that the derivative argument is separate from the equitable and third party beneficiary doctrines it found that Starbucks argued in its Supplemental Brief "for the very first time, that Lubin's claims should not be arbitrated because they are derivative of his wife's claims," and therefore waived the argument. (App. p. 236 at 248).

In *Eckel v. Equitable Life Assur. Soc. of the U.S.*, 1 F. Supp. 2d 687, 687–88 (E.D. Mich. 1998), the Eastern District of Michigan analyzed a non-employee spouse's derivative COBRA claim under the third-party beneficiary doctrine. In *Eckel*, the former employee and his spouse asserted claims based on an alleged deficient COBRA notice. *Id.* As is the case here, the employee had signed an agreement to arbitrate, but the non-employee spouse had not. *Id.* at 688, n. 1, 2. The court found the non-employee spouse's claim was "derivative of her [spouse]'s" because the non-employee spouse was only a party to the COBRA notice action as

a beneficiary/dependent on her spouse's employee health insurance. *Id.* Thus, the non-employee spouse's "interests and claims [we]re essentially identical to" the employee-spouse's COBRA notice claims and had to be arbitrated. *Id.* The court explained that the non-employee spouse "is a party to this suit because she was listed as a dependent under her [spouse]'s insurance policy. As such, her claims are derivative of her [spouse]'s and also subject to arbitration." *Id.* at 687 FN1. *See also, e.g,, Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752, 762 (Fla. 2013) (holding nonsignatory plaintiffs were bound to arbitrate wrongful death claim that was "derivative" of wrong committed against signatory to the arbitration agreement).

Similarly, *Gomez v. Allied Pros. Ins. Co.*, 457 F. Supp. 3d 1351, 1360 (S.D. Fla. 2020) provides for estoppel of a nonsignatory and analyzes a derivative claim under the estoppel theory. The *Gomez* court found that "Plaintiff's bad faith claim is 'not separate and distinct from' but is 'derivative of' a potential claim [the signatory] could bring based on the policy." *Id.* at 1360.

The same holds true here, as Lubin's right to COBRA notice and benefits, and his related claim for alleged failure to provide adequate notice of continuation coverage, relied upon his beneficiary status to the Starbucks Plan under the contract containing an arbitration provision. Had Lubin's spouse not entered into the Arbitration Agreement, Lubin would not have been entitled to ERISA-governed

health benefits or COBRA notice following the qualifying event, and could not assert a COBRA claim.

By failing to recognize that third-party beneficiary and estoppel doctrines can apply to derivative claims, the District Court erred in concluding that Starbucks waived the argument that Lubin's claims are derivative of his wife's claims.

### B.    Lubin's Claims Are Purely Derivative of His Wife's Claims

To explain its Oder denying the Motion, the District Court's Order adopted the Appellees' final argument that Lubin's claim is separate and apart from his wife's employment. Specifically, the District Court held that Lubin's "claims are premised on a deficient COBRA notice and his independent statutory rights under 29 U.S.C.A. § 1166(a) and 29 C.F.R. § 2590.606-4." The District Court further found that "[Lubin] seeks only to enforce his own statutory rights under 29 U.S.C.A. § 1166(a) and 29 C.F.R. § 2590.606-4." (App. p. 236, at 249).

The District Court's Order directly contradicts an earlier ruling by the Eastern District of Michigan on this exact issue. When faced with this very same question (*i.e.*, whether a non-employee beneficiary's claim is derivative of the employee spouse's claim), the Eastern District of Michigan found that a non-employee wife's claim for failure to inform her of COBRA benefits is derivative of the employee spouse's claim. *Eckel*, 1 F. Supp. 2d at 687–88 FN1&2. In *Eckel*, the court found

that, although the wife did not sign the arbitration agreement, "'her interests and claims are essentially identical to' her husband's." *Id.* at FN2.[5]

In the Amended Complaint, Lubin alleges that he was a "qualified beneficiary" under the Starbucks Plan and in that capacity he was entitled to COBRA notice. (App. p. 75 ¶¶ 39-40). A "qualified beneficiary" is generally defined as either a "spouse of the covered employee" or "the dependent child of the employee." *See* 29 USCS § 1167(3).[6] Based on that statutory language, absent his wife's former status as an employee, Lubin could not be a "qualified beneficiary" entitled to notice of continuation coverage under the plan. 29 U.S.C.A. § 1161 (West).

"The COBRA notification requirement exists because employees are not expected to know instinctively of their right to continue their healthcare coverage." *Cummings v. Washington Mut.*, 650 F.3d 1386, 1391 (11th Cir. 2011).[7] The Eleventh Circuit has described the purpose of COBRA notice as follows: "The notice must be sufficient to permit the discharged employee to make an informed decision whether

---

[5] There is no authority under the FAA or otherwise, and the Court and parties did not cite to any, which permits the District Court to parse out Lubin's COBRA claims from his wife's claims, sending one to arbitration while retaining jurisdiction over the other.

[6] A "covered employee," in turn, is defined as "an individual who is (or was) provided coverage under a group health plan by virtue of the performance of services by the individual for 1 or more persons maintaining the plan." *See* 29 U.S.C.A. § 1167(2).

[7] Plaintiffs alleged that in their Amended Complaint. (App. 75 at ¶ 22).

to elect coverage." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1230 (11th Cir. 2002). In other words, Lubin's right to COBRA notice arose solely as a result of his wife's employment relationship; he would not have been entitled to the coverage, notice of its cessation or the ability to continue coverage under the Starbucks Plan absent that employment relationship. His wife's employment relationship only came about due to his wife's entry into the Arbitration Agreement. As a result, the right to the notice about which Lubin complains is indisputably connected to Lubin's wife's employment relationship and the Arbitration Agreement.

Notably, the basis for the District Court's conclusion that Lubin's claim is not derivative (*i.e.*, the finding that Lubin asserts his own rights and not those of his wife) also is incorrect, in that it contradicts the law in the Eleventh Circuit. Specifically, in the Amended Complaint, Appellees seek an award including, among other things, "statutory penalties to the Class pursuant to 29 U.S.C.A. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for each Class Member who was sent a defective COBRA notice by Defendant." (App. p. 75, p. 86). The putative class consists of participants and beneficiaries of the Starbucks Plan. In other words, in the Amended Complaint, Appellees seek relief in the form of statutory penalties for Lubin and other plan beneficiaries. The Eleventh Circuit, however, has held that a penalty for failure to provide COBRA notice can only be

awarded to a participant of the plan. *See Wright*, 270 F.3d at 1344. In *Wright*, this Court specifically held that statutory penalties cannot be separately awarded to a beneficiary who was not a participant/employee. *Id.* The Eleventh Circuit came to its conclusion after evaluating the statutory penalty language in 29 U.S.C.A. § 1132(c)(1)(A), which provides a court the ability to award statutory penalties for deficient COBRA notices and found that, because it does not include "or beneficiary," a beneficiary is not independently entitled to statutory penalties for failure to provide COBRA notice. 29 U.S.C.A. § 1132(c)(1)(A).[8] That is the very same statutory provision on which Lubin relies for his request for statutory penalties. In sum, by seeking penalties under 29 U.S.C.A. § 1132(c)(1)(A), as amended by 29 C.F.R. § 2575.502c-1, Lubin does not seek "only to enforce his own statutory rights under 29 U.S.C.A. § 1166(a)," as he argued and the District Court concluded. Rather, Lubin's claim is derivative of his wife's claim, in part, because he seeks statutory damages which are only available to the participant, his wife.

For the reasons set forth above, this Court should make the same conclusion here as in *Eckel*, *to wit*: Lubin's COBRA claims are derivative of his wife's claims. To not do so would not only allow beneficiaries to circumvent the arbitration agreements entered into by employee participants, but would also result in a split in

---

[8] 29 C.F.R. § 2575.502c-1 increases the daily penalty rate from $100 to $110 per day.

holdings on this issue among the federal courts and affirm a conclusion that Lubin asserts his own rights, which conclusion contradicts the Eleventh Circuit's decision in *Wright*.

## IV. THE DISTRICT COURT ERRED IN CONCLUDING LUBIN CANNOT BE BOUND AS A THIRD-PARTY BENEFICIARY SIMPLY BECAUSE HE DID NOT SIGN THE AGREEMENT

In its Order, the District Court concluded that the third-party beneficiary doctrine enables a non-contracting party to enforce a contract against a contracting party but does not allow a contracting party to enforce the agreement against a non-contracting party. (App. p .236, p. 247). In so holding, the District Court relied on *Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 148 (Fla. 2016). *Mendez*, however, is limited because it merely held "two parties cannot bind a third party to their agreement simply by conferring a benefit on the third party." Here, as explained in Section II(B), Lubin is not suing based on a claim that is independent of a benefit conferred upon him. Rather, his lawsuit is based on that very benefit (his wife's employment with Starbucks and the health plan). Thus, *Mendez* is inapposite.

Additionally, while language in *Mendez*, 203 So. 3d 146 may call into question whether nonsignatories may ever be bound by a contract, authoritative cases construing Florida law prior to *Mendez* clearly held nonsignatories may be bound by arbitration agreements. *Germann v. Age Inst. of Fla., Inc.*, 912 So. 2d 590, 592 (Fla. Dist. Ct. App. 2005) ("a nonsignatory to an arbitration agreement may be

bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract, or if the nonsignatory is specifically the intended third party beneficiary of the contract."); *Martha A. Gottfried, Inc. v. Paulette Koch Real Est.*, 778 So. 2d 1089 (Fla. Dist. Ct. App. 2001) (by accepting economic and professional benefits of Hoffpauer's membership, Gottfried as a nonsignatory was bound by arbitration agreement signed by Hoffpauer); *Terminix Int'l Co., LP v. Ponzio*, 693 So. 2d 104, 109 (Fla. Dist. Ct. App. 1997) (*aff'd Sears Authorized Termite & Pest Control v. Sullivan*, 816 So. 2d 603 (Fla. 2002)) (reversing order denying motion to compel arbitration of claims husband and wife filed for negligence and breach of contract; although wife did not sign contract with Terminix she was bound by the arbitration agreement because she was "asserting third party beneficiary status to the contract as a limited class which was intended to benefit from the contract"). The *Mendez* court did not distinguish or address those cases.

The Eleventh Circuit has previously recognized that nonsignatories may be bound to arbitrate due to third-party beneficiary status under Florida law. *Kong v. Allied Pro. Ins. Co.*, 750 F.3d 1295, 1302 (11th Cir. 2014) (affirming order compelling nonsignatory to arbitrate: "under Florida law, a nonsignatory to an arbitration agreement may be bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract");

34

*Interpool Ltd. v. Through Transp. Mut. Ins. Ass'n Ltd.*, 635 F. Supp. 1503, 1505 (S.D. Fla. 1985) ("The law is clear that a third party beneficiary is bound by the terms and conditions of the contract that it attempts to invoke"). In recognizing that *Mendez* does not hold that a third-party beneficiary can never be bound by an arbitration agreement, federal courts in Florida have continued post-*Mendez* to recognize that nonsignatories may be bound to an arbitration agreement under a third-party beneficiary theory. *See, e.g., Gomez v. Allied Pros. Ins. Co.*, 457 F. Supp. 3d 1351, 1360 (S.D. Fla. 2020) ("Florida law authorizes compelling non-signatories to arbitrate under both equitable estoppel and third-party beneficiary theories"); *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 281 (M.D. Fla. 2019) (under Florida law, ordinarily a third-party beneficiary of a contract is bound by an arbitration clause in that contract).

Here, Lubin's statutory right to COBRA notice only arose as a result of his status as a beneficiary of the employee group health plan available to his wife due to her signature on the arbitration agreement. (App. p 216 at p. 217). Lubin did not deny and the District Court found Lubin was entitled to the subject COBRA notice only as a beneficiary, not a participant. (App. p. 75 ¶¶ 39-42). Lubin's wife accepted the arbitration agreement that requires arbitration of her own claim based on an alleged deficient COBRA notice. (App. p. 163 at 170, 178; *see also* App. p. 236). Lubin is a third-party beneficiary of his wife's employment and his right to

continuation coverage or COBRA claim for alleged failure to provide adequate notice of that right is derivative of that of his wife. Accordingly, the District Court erred in failing to enforce the entire Arbitration Agreement under the third-party beneficiary doctrine simply because Lubin did not sign the agreement.

## V.   THE DISTRICT COURT ERRED IN FINDING LUBIN MAY BE ESTOPPED ONLY IF HIS CLAIMS ARE PURELY CONTRACTUAL

In its Order, the District Court adopted a narrow interpretation of estoppel and concluded Lubin was not estopped from avoiding the Arbitration Agreement because his claims are not contractual based on the arbitration agreement. (App. p. 236, p. 246). The District Court's holding is inconsistent with the Eleventh Circuit's acceptance of a direct benefits estoppel theory and the Florida case law finding that estoppel can prevent nonsignatories from avoiding arbitration of claims that are derivative or have a significant relationship with the agreement to arbitrate.

Courts in this Circuit recognize "direct benefit estoppel theory and the equitable estoppel theory." *Kakawi Yachting, Inc. v. Marlow Marine Sales, Inc.,* 13–cv–1408–T–TBM, 2014 WL 12650701, *8 (M.D. Fla. Oct. 3, 2014). "Direct-benefit estoppel involves non-signatories who, during the life of the contract, have embraced the contract despite their nonsignatory status, but then during litigation, attempt to repudiate the arbitration clause in the contract." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517–18 (5th Cir. 2006) (quotations omitted) (applying estoppel theory to forum-selection clause in ship classification contract). Under both

the direct benefit estoppel theory and the equitable estoppel theory, the rationale for application of equitable principles to compel arbitration for or against a nonsignatory is the same—estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes. *Kakawi Yachting,* 2014 WL 12650701, *8 (McCoun, Mag.).[9]

Although Appellees cited to cases that rejected the estoppel theories as they applied to nonsignatories, those cases do not change the general principle that estoppel can serve to bind a nonsignatory to an arbitration agreement. For example, while *Jacocks* supports a restrictive reading of Florida law as it applies to estoppel, that decision has narrow application. *See Jacocks v. Capital Commer. Jacocks v. Cap. Com. Real Est. Grp., Inc.*, 310 So. 3d 71 (Fla. Dist. Ct. App. 2021). In that case, Jacocks asserted a legal malpractice claim against a law firm and attorney that had a retainer agreement with a third party (a co-plaintiff to Jacocks in an underlying lawsuit). Jacocks claimed the firm settled the underlying matter for the co-plaintiff without sharing the proceeds with him. The law firm claimed Jacocks was bound to arbitrate pursuant to the retainer agreement underlying his claim. The Fourth District Court of Appeal found Jacocks was not bound as a third-party beneficiary because he was not seeking to enforce the retainer agreement.

---

[9] The direct theory of estoppel was described and argued in Starbucks' Second Motion to Compel Arbitration (Doc. 18 pp 15-17) and its supplemental brief, Doc. 27, pp. 3-4.

Unlike here, the plaintiff in *Jacocks* sued based on an alleged breach of a duty owed to him as an alleged client of the law firm – a duty that relied on a relationship that was entirely independent of and did not arise from the law firm's retainer with the co-plaintiff. In that case, the co-plaintiff's relationship with the law firm and the retainer the co-plaintiff signed could have not existed at all and Jacocks still could have pursued his claim against the law firm. In direct contrast, Lubin's claim is entirely dependent on his spouse's employment with Starbucks. *See* 29 U.S.C.A. § 1167.

Similarly, although Appellees relied on *Ray v. NPRTO Fla., LLC*, 322 F. Supp. 3d 1261, 1263 (M.D. Fla. 2017), *aff'd,* 743 F. App'x 955 (11th Cir. 2018), it is inapposite. There, the husband entered into an agreement with the defendant to purchase a bed and the agreement contained an arbitration agreement. When Ray got into a billing dispute with the defendant, his wife called the defendant, which began a campaign of robo calls to Ray's wife to collect the money due under the agreement. The wife sued for violation of the Telephone Consumer Protection Act and Florida Consumer Protection Act, and the court denied the defendant's motion to compel arbitration. Like in *Jacocks*, the wife's claim did not depend on the benefit she received pursuant to her husband's agreement.

This case is much more like *Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752, 762 (Fla. 2013) than *Jacocks* or *Ray*. *See Laizure*, 109 So. 3d at 762. In *Laizure*,

the Florida Supreme Court held that nonsignatory plaintiffs were bound to arbitrate a wrongful death claim because the wrongful death claim was "***derivative***" of the wrong committed against the decedent, who was a signatory to the arbitration agreement. In reaching that ruling, the Florida Supreme Court recognized that other states are split as to whether a decedent's estate and heirs are bound by such an arbitration agreement. *Id.* at 761. It also recognized that strong arguments exist on both sides of the issue. *Id.* at 762. Ultimately, however, the Florida Supreme Court found that the derivative nature of a wrongful death action was the compelling factor that mandated its finding that the arbitration agreement was binding on the nonsignatories. *Id. Laizure* directly contradicts the District Court's ruling, and demonstrates that Florida law does bind nonsignatories to arbitration agreements, even when not simply enforcing the underlying contract.

*Gomez* also provides for estoppel of a nonsignatory. *Gomez*, 457 F. Supp. at 1360. In *Gomez*, as here, the right to benefits under the agreement relied upon the beneficiary status of the plaintiff to rights under an insurance contract containing an arbitration provision. The court compelled arbitration of the nonsignatory's common law bad faith claim based on alleged breach of duties owed to the signatory to the insurance contract, noting that "by seeking benefits arising from the policy's provisions, Plaintiff is estopped from avoiding the burdens of the same policy" and the bad faith claim was "derivative of" the potential claim the insured could pursue.

*See also Teel*, 2015 WL 1346846, at *7 ("Because … Plaintiffs' claims also rely on the existence of the … agreements, their status as non-signatories … does not prevent the arbitration agreements from applying").

Similar to *Gomez*, Lubin's COBRA action seeks to invoke benefits arising from the Starbucks Plan. Lubin accepted the benefits of his wife's employee relationship with Starbucks by becoming a beneficiary of the Starbucks Plan. He cannot now avoid the consequences of his wife's employment agreement, which included an arbitration agreement, while simultaneously seeking relief for not having elected continued coverage under the Starbucks Plan which were only available to him as a result of his wife's employment. Moreover, he cannot seek statutory damages to which only a participant is entitled, and simultaneously avoid the arbitration agreement by asserting his claim does not relate to the participant's employment. The equitable principles of estoppel should compel him to accept the arbitration terms that came with his acceptance of the benefits of his wife's participation in the Starbucks Plan, and compel him to arbitration.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request that the Court reverse the District Court's denial of Appellants' Motion to Compel Arbitration as to Lubin's claims, grant Appellant's Second Motion to Compel Arbitration in its

entirety, and remand the case to the District Court with instructions to refer the individual claims to arbitration and dismiss the class claims.

 DATED this 8th day of June, 2021

                                 Respectfully submitted,

                                 By: */s/ Stefanie M. Mederos*
                                    Sherril M. Colombo, Esq.
                                    Florida Bar No. 948799
                                    Email:  SColombo@littler.com
                                    Stefanie Mederos, Esq.
                                    Florida Bar No. 12041
                                    Email:   smederos@littler.com
                                    LITTLER MENDELSON, P.C.
                                    Wells Fargo Center
                                    333 SE 2nd Avenue
                                    Suite 2700
                                    Miami, FL  33131
                                    Telephone:305.400.7500
                                    Facsimile: 305.603.2552

                                    *Attorneys for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), because this brief contains 9251 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in 14-point proportionally spaced Times New Roman typeface.

Dated this 8th day of June 2021.

By:  */s/ Stefanie M. Mederos*
Stefanie M. Mederos, Esq.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 8th day of June 2020, I electronically filed the foregoing document via the Eleventh Circuit Court ECF system. I also certify that the foregoing document is being served on all counsel of record or pro se identified on the attached Service List via transmission of notices of Electronic Filing generated by the Eleventh Circuit Court ECF system or in some other authorized manner.

By:  /s/ *Stefanie M. Mederos*
Stefanie M. Mederos, Esq.

43

## SERVICE LIST

***ATTORNEY FOR APPELLEES***

Alejandro F. Garcia, Esq.
Brandon J. Hill
Florida Bar Number: 37061
Email: bhill@wfclaw.com
Email: aheystek@wfclaw.com
WENZEL FENTON CABASSA, P.A.
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Direct: 813-337-7992
Main: 813-224-0431
Facsimile: 813-229-8712

and

Chad A. Justice
Florida Bar Number: 121559
E-mail: chad@getjusticeforjustice.com
JUSTICE FOR JUSTICE, LLC
1205 N Franklin St., Suite 326
Tampa, Florida 33602
Direct No. 813-566-0550
Facsimile: 813-566-0770

***ATTORNEYS FOR APPELLANT***

Sherril M. Colombo, Esq.
Florida Bar No. 948799
E-Mail: scolombo@littler.com
Secondary:grivas@littler.com
Stefanie Mederos, Esq.
Florida Bar No. 12041
E-mail: smederos@littler.com
Secondary: ccano@littler.com
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL  33131
Telephone:  (305) 400-7500
Facsimile:   (305) 603-2552