CASE NO.: 21-11215

# United States Court of Appeals
# for the Eleventh Circuit

**STARBUCKS CORPORATION,**

*Defendant-Appellant,*

**v.**

**RAPHYR LUBIN,**

*Plaintiff-Appellee.*

## ANSWER BRIEF OF PLAINTIFF-APPELLEE

From the Order Denying, in Part, Defendant's-Appellant's
Second Motion to Compel Arbitration
Entered on March 15, 2021
By the United States District Court for the Middle District of Florida
Civil Action No. 8:20-cv-1311

Luis A. Cabassa
Brandon J. Hill
WENZEL FENTON CABASSA, P.A.
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431

*Attorneys for Plaintiff-Appellee*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to this Court's Local Rules 26.1-1 through 26.1-3, counsel for Plaintiff-Appellee, certifies that the following is a complete list of interested persons:

1.    Cabassa, Luis A., Counsel for Appellee;

2.    Colombo, Sherril M., Counsel for Appellant;

3.    Hill, Brandon J., Counsel for Appellee;

4.    Honeywell, Charlene Edwards, Judge, U.S. District Court, Middle District of Florida;

5.    Justice, Chad A., Counsel for Appellee;

6.    Justice for Justice, LLC, Counsel for Appellee;

7.    Littler Mendelson, P.C., Counsel for Appellant;

8.    Lubin, Raphyr, Appellee;

9.    Mederos, Stefanie M., Counsel for Appellant;

10.   Starbucks Corporation, Appellant; and

11.   Torres, Ariel, Plaintiff, Non-Appellant.

# STATEMENT OF ORAL ARGUMENT

Pursuant to Rule 34(a) of the Federal Rules of Appellate Procedure and 11th Cir. R. 28-1(c), Appellee requests oral argument to assist this Court with its review of this case and to address any questions this Court may have.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS..................................................C-1

STATEMENT OF ORAL ARGUMENT ................................................... i

TABLE OF CONTENTS.....................................................................ii-iii

TABLE OF CITATIONS ................................................................iv-vii

STATEMENT OF JURISDICTION.......................................................1

STATEMENT OF THE ISSUES..........................................................2

STATEMENT OF THE CASE AND STANDARD OF REVIEW ................... 3-15

SUMMARY OF THE ARGUMENT ....................................................16

ARGUMENT ................................................................................17

I.    THE FAA DOES NOT SUPPORT COMPELLING ARBITRATION
      OF LUBIN'S CLAIM ...............................................................17

II.   LUBIN'S CLAIMS ARE NOT COVERED BY HIS WIFE'S
      AGREEMENT...........................................................................20

III.  THE DISTRICT COURT CORRECTLY HELD THAT ESTOPPEL
      DOES NOT WARRANT COMPELLING ARBITRATION OF
      LUBIN'S CLAIM.....................................................................23

IV.   SIMILARLY, THE DISTRICT COURT PROPERLY REJECTED
      STARBUCKS' THIRD-PARTY BENEFICIARY ARGUMENTS .............27

V.    THE DISTRICT COURT CORRECTLY HELD THAT
      STARBUCKS' DERIVATIVE ARGUMENTS LACK MERIT.................29

VI.   THE DELEGATION PROVISION IS UNEFORCEABLE ........................34

CONCLUSION. .................................................................................38

CERTIFICATE OF COMPLIANCE.......................................................39

CERTIFICATE OF SERVICE .................................................................40

# **TABLE OF CITATIONS**

<u>**CASES**</u>                                                                                                                          <u>**PAGE(S)**</u>

*AT & T Techs., Inc. v. Commc'n,*
    475 U.S. 643 (1986) ....................................................................... 17

*All American Semiconductor, Inc. v. Unisys* Corp.,
    637 So.2d 59 (Fla. 3d DCA 1994) ................................................... 20

*Bahamas Sales Assoc., LLC v. Byers,*
    701 F.3d 1335 (11th Cir. 2012) ................................................. 12, 25

*Bazemore v. Jefferson Cap. Sys.,*
    827 F.3d 1325 (11th Cir. 2016) ....................................................... 11

*Bell v. Cendant Corp.,*
    293 F.3d 563 (2d Cir. 2002) ........................................................... 34

*Calderon v. Sixt Rent a Car, LLC,*
    No.: 20-10989, 2021 WL 2946428 (11th Cir. July 14, 2021)...................... 18, 19

*DeBene v. BayCare Health Sys., Inc.,*
    1 688 F. App'x 831 (11th Cir. 2017) ................................................. 12

*Drayton v. Toyota Motor Credit Corp.,*
    No.: 3:16-cv-46, 2016 WL 8928704 (M.D. Fla. July 11, 2016) ........................ 25

*Eckel v. Equitable Life Assur. Soc. of the U.S.,*
    1 F. Supp. 2d 687 (E.D. Mich. 1998) ....................................... 9, 10, 29

*Egidi v. Mukamai,*
    571 F.3d 1156 (11th Cir. 2009).............................................. 38, fn. 8

*Employers Ins. of Wausau v. Bright Metal Specialties, Inc.,*
    251 F.3d 1316 (11th Cir. 2009)...................................................... 17

*Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner,*
    612 So.2d 1378 (Fla. 1993) .......................................................... 13

*FL-7, Inc. v. SWF Premium Real Estate, LLC,*
    259 So. 3d 285 (Fla. 2d DCA 2018) ................................................ 35

iv

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ...................................................................... 34

*Gomez v. Allied Pros. Ins. Co.*,
457 F. Supp. 3d 1351 (S.D. Fla. 2020)............................................ 31

*Grigson v. Creative Artists Agency, LLC*,
210 F.3d 524 (5th Cir. 2000).......................................................... 26

*In re Humana, Inc. Managed Care Litigation*,
333 F.3d 1247 (11th Cir. 2003) ............................................ 8, 16, 24

*Ivax Corp. v. B. Braun of Am., Inc.*,
286 F.3d 1309 (11th Cir. 2002) ...................................................... 17

*Jenkins v. First Am. Cash Advance of Ga., LLC*,
400 F.3d 868 (11th Cir. 2005) ........................................................ 16

*Johnson v. Pires*,
968 So.2d 700 (Fla. 4th DCA 2007) ............................................... 23

*Kong v. Allied Prof'l Ins. Co.*,
750 F.3d 1295 (11th Cir. 2014) ...................................................... 31

*Lavigne v. Herbalife, Ltd.*,
No.: 18-14048, 2020 WL 4342671 (11th Cir. July 29, 2020) .......... 25

*Laizure v. Avante at Leesburg, Inc.*,
109 So.3d 752 (Fla. 2013) .............................................................. 33

*Mendez v. Hampton Ct. Nursing Ctr., LLC*,
203 So. 3d 146 (Fla. 2016) ............................................ 13-14, 27-28

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ...................................................................... 18-19

*MS Dealer Serv. Corp. v. Franklin*,
177 F.3d 942 (11th Cir. 1999) ........................................................ 24

*Multi–Fin. Sec. Corp. v. King*,
386 F.3d 1364 (11th Cir. 2004) ...................................................... 16

*Musnick v. King Motor Co.*,
325 F.3d 1255 (11th Cir. 2003) ...................................................... 17

*Nestler-Poletto Realty, Inc. v. Kassin*,
    730 So. 2d 324 (Fla. 4th DCA 1999) ................................................. 23

*Pacemaker Corp. v. Euster*,
    357 So.2d 208 (Fla. 3d DCA 1978) .................................................... 20

*PacifiCare Health Sys., Inc. v. Book*,
    538 U.S. 401 (2003) .......................................................................... 16

*Painewebber, Inc. v. Hess*,
    497 So.2d 1323 (Fla. 3d DCA 1986) ................................................. 20

*Ray v. NPRTO Fla., LLC*,
    743 F. App'x 955 (11th Cir. 2018) .................................................... 28

*Shingleton v. Bussey*,
    223 So.2d 713 (Fla. 1969) ................................................................ 13

*Teel v. Aaron's, Inc.*,
    No.: 3:14-cv-640, 2015 WL 1346846 (M.D. Fla. Mar. 24, 2015) ................... 30

*Thomson-CSF, S.A. v. American Arbitration Ass'n.*,
    64 F.3d 773 (2nd Cir. 1995) ....................................................... 23-24

*Valdivieso v. Cushman & Wakefield, Inc.*,
    No.: 8:17-cv-118, 2017 WL 2191053 (M.D. Fla. May 18, 2017) ........... 33, fn. 6

*Vargas v. Schweitzer-Ramras*,
    878 So. 2d 415 (Fla. 4th DCA 2004) ................................................. 23

*Vinson v. Koch Foods of Alabama, LLC*,
    735 F. App'x 978 (11th Cir. 2018) .................................................... 15

*Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) .................................................................. 20, fn 5

*Wilson v. Starbucks Corp.*,
    385 F. Supp. 3d 557 (E.D. Ky. 2019)...................................... 10, 35-37

*Wright v. Hanna Steel Corp.*,
    270 F.3d 1336 (11th Cir. 2001).................................................... 32-33

## STATUTES

9 U.S.C. § 16(a)(1) ........................................................................*passim*

29 U.S.C. § 1166(a) ................................................... 3, 9, 12, 15, 33, 34

## OTHER

29 C.F.R. § 2590.606-4 ................................................................. *passim*

## STATEMENT OF JURISDICTION

This appeal arises from the District Court's Order (Doc. 33, p. 236)[1] denying, in part, Defendant's-Appellant's ("Starbucks") Second Motion to Compel Arbitration. Doc. 18, p. 89. The District Court entered the Order on March 15, 2021 (hereinafter the "Order"). Doc. 33, p. 236. The Order rejected Starbucks' equitable estoppel and third-party beneficiary arguments as to Lubin. In the Order the District Court also held that Starbucks' derivative arguments "lacked merit." Doc. 33, pp. 245-249.

Starbucks timely appealed the Order on April 9, 2021, under Rules 3 and 4 of the Federal Rules of Appellate Procedure. This Court has jurisdiction over the appeal pursuant to the Federal Arbitration Act, 9 U.S.C.A. § 16(a)(1).

---

[1] Citations in this brief in the form "Doc. X, p. Y" refer to the District Court docket entry at "X", while page "Y" refers a specific page from the Starbucks' Appendix filed in this appeal. Any "¶" citations refer to specific paragraph numbers. Appendix citations without a corresponding District Court docket entry are referred to simply as "Appendix, p. __." Finally, Lubin relies exclusively on the documents in the Appendix filed by Starbucks.

## <u>STATEMENT OF ISSUES</u>

1.     Whether this Court should reject Starbucks' FAA arguments.

2.     Whether Lubin's claims fall outside of his wife's arbitration agreement with Starbucks.

3.     Whether the District Court correctly held that estoppel does not warrant compelling arbitration of Lubin's claim.

4.     Whether the District Court properly rejected Starbucks' third-party beneficiary arguments.

5.     Whether the District Court correctly held that Starbucks' derivative arguments lack merit.

6.     Whether the delegation clause in the Starbucks' arbitration agreement is unenforceable.

## **STATEMENT OF THE CASE**

Starbucks violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), by failing to provide Lubin with a COBRA notice that complies with the law. As the District Court correctly held, Lubin is not seeking to enforce the contract between his wife and Starbucks. Doc. 33, p. 249. Instead, Lubin's claims are premised on his statutory rights pursuant to 29 C.F.R. § 2590.606-4 and 29 U.S.C. § 1166(a). *Id.* Therefore, Starbucks cannot compel Lubin to arbitrate the claims raised in this lawsuit. *Id.* This Court should affirm the District Court's Order.

1.    **Statement of Facts.**

The first Named Plaintiff, non-Appellee Ariel Torres ("Torres"), filed his original complaint in District Court on June 8, 2020, against his former employer, Starbucks, for failing to provide him with a COBRA notice that complies with the law. Doc. 1, pp. 11-31. Starbucks filed its first Motion to Compel Arbitration on June 7, 2020. Doc. 12, pp. 46-74. In that Motion Starbucks sought to compel arbitration of Torres' claims pursuant to an arbitration agreement Torres entered into when he worked for Starbucks. *Id.* As explained later, because Torres worked for Starbucks, and because Starbucks presented sufficient evidence he agreed to the terms and conditions of the Starbucks arbitration agreement, Torres did not oppose arbitration. Doc. 23, pp. 165. Thus, Torres is not part of this appeal.

3

Lubin is a different story entirely. Lubin was not added as a Named Plaintiff until the filing of the First Amended Complaint on July 21, 2020. Doc. 15, p. 75. Although his wife, Louisiana Louis, worked for Starbucks, Lubin did not. Doc. 15, p. 81; Doc. 23, p. 166, ¶ 11 (citing to Lubin Decl., p. 23-1, p. 180, ¶¶ 3-4). Thus, Lubin was never provided with a copy of the Starbucks arbitration agreement. *Id*.

As a result of his wife's termination in February of 2019, Lubin experienced a qualifying event as defined by 29 U.S.C. § 1163(2). Doc. 15, p. 81, ¶ 41. Following this qualifying event, Starbucks caused its COBRA Administrator, Alight Solutions, to mail Lubin the deficient COBRA enrollment notice giving rise to his COBRA claims. Doc. 15, p. 81, ¶ 42.

Unlike Torres, who unquestionably received and agreed to the Starbucks' arbitration agreement, because Starbucks and Lubin never came to a meeting of the minds regarding essential terms of the agreement (or, in fact, any terms whatsoever), no enforceable contract exists between Lubin and Starbucks. Doc. 23, p. 166, ¶ 13.

Moreover, Lubin's COBRA claim did not arise until *after* his wife was terminated and the deficient COBRA notice was mailed to him. Doc. 23, p. 166, ¶ 14. This guts the argument by Starbucks suggesting his wife's "continued

4

employment" somehow warrants compelling Lubin's claims to arbitration.[2]  Doc. 23, p. 166, ¶ 13.

In sum, Lubin did not work at Starbucks, was not paid by Starbucks, and received no consideration from Starbucks in exchange for his purported agreement to arbitrate his COBRA claims against Starbucks.   Just as it failed to do in the District Court, Starbucks provides no viable reason for this Court to force Lubin to arbitrate his claims.

---

[2]  Additionally, it is worth noting that besides trying to enforce an arbitration agreement that Lubin had never seen (much less agreed to), in a footnote included in its Second Motion to Compel Arbitration Starbucks took a surprisingly incongruous position by positing that, "Plaintiffs' claims fail as a matter of law because they failed to exhaust the internal appeal procedure provided in the governing plan documents." Doc. 23, p. 166, ¶ 17. (Internal citations omitted).   By advancing this argument, at least at the District Court level, Starbucks provided an alternative reason to deny its Motion to Compel— this time based upon the plain language of its own arbitration agreement.  Doc. 23, p. 166, ¶ 18.

More specifically, the Starbucks arbitration agreement contains a section clearly labeled: "Claims Not Covered by this Agreement," which excludes from coverage by the agreement any "claim for … other benefits under a plan or program that provides its own process for dispute resolution." Doc. 23, p. 166, ¶ 19. (Internal citations omitted).   Because Starbucks took the position with the District Court that Lubin's claims are somehow subject to the "governing plan" (the Starbucks Health Plan), a plan which Starbucks also claims includes an administrative exhaustion requirement, the Starbucks' arbitration agreement, by definition, excludes Lubin's claims from coverage under the arbitration agreement. *See* Doc. 18-2, p. 148, for a complete copy of the Starbucks' arbitration agreement improperly seeks to enforce against Lubin.

2.    **Proceedings Below**.

As explained initially above, the original putative class action Complaint was filed on June 8, 2020.  Doc. 1, p. 11.  The First Amended Complaint was filed on July 21, 2020.  Doc. 15, p. 75.

### a.    Starbucks' Second Motion to Compel Arbitration.

In response to the First Amended Complaint, on August 4, 2020, Starbucks filed its Second[3] Motion to Compel Arbitration.  Doc. 18, p. 89.

Starbucks sought to compel arbitration as to Torres' claim based on the arbitration agreement he entered into while employed.  Doc. 18, p. 89.  Because he agreed to arbitrate his claims against Starbucks, Torres consented to arbitration. Doc. 23, p. 165, ¶¶ 5-7.

Lubin, however, never worked for Starbucks.  Doc. 23, p. 165, ¶¶ 8, 11.  Thus, he never agreed to arbitrate his COBRA claims against Starbucks. Doc. 23, p. 166, ¶ 12.  To be sure, Lubin is not party to the arbitration agreement Starbucks seeks to invoke against him. Doc. 23, p. 165, ¶¶ 8-21.  The agreement is between Starbucks and his wife (a former Starbucks employee).  Doc. 28, p. 225.  As attested to in Lubin's declaration (Lubin Decl., p. 23-1, p. 180, ¶¶ 3-4), prior to the filing of the

---

[3] Starbucks filed its First Motion to Compel Arbitration as to Torres' original Complaint on June 7, 2020.  Doc. 12, pp. 46-74.  However, the filing of the First Amended Complaint mooted Starbucks' First Motion to Compel Arbitration.  Thus, the First Starbucks' Motion is not at issue in this appeal.

Second Motion to Compel by Starbucks, Lubin had never seen the Starbucks' arbitration agreement, much less signed it—he certainly never agreed to it. Doc. 28, p. 225, Lubin Decl., p. 23-1, p. 180, ¶¶ 3-4.  No meeting of the minds occurred. Doc. 28, p. 225.  And no contract was formed.  *Id.*

Despite lacking any agreement with him, Starbucks' Second Motion to Compel Arbitration argued—under three equally-flawed theories—that somehow Lubin was still required to arbitrate his claims against it.  Those three arguments by Starbucks included: 1) equitable estoppel; 2) a third-party beneficiary theory; and, 3) a "derivative claim" theory.  Each argument failed.

> **b.    Arguments Presented by Lubin to the District Court in Opposition to Starbucks' Second Motion to Compel Arbitration.**

Before addressing Starbucks' three substantive arguments, Lubin's Opposition opened by arguing that Lubin's COBRA claims are <u>not</u> covered by his wife's arbitration agreement.  Doc. 23, pp. 169-171.  Rather, the arbitration clause covers only claims brought by Lubin's wife, not him.  *Id.*  Lubin never agreed to submit any of his claims to arbitration.

Next, in his Opposition, Lubin attacked each of Starbucks' three core arguments.  Beginning with equitable estoppel, in Lubin's Opposition (*see* Doc. 23, pp. 172-174) and Supplemental Brief (*see* Doc. 28, pp. 227-228) Lubin correctly argued the theory of equitable estoppel under Florida law only binds a non-signatory,

7

like him, to arbitration (1) "where a non-signatory plaintiff sues a signatory defendant, based upon an agreement that contains an arbitration clause between the defendant and a third-party to whom the plaintiff is affiliated," or, (2) where a company's "non-signatory affiliate is compelled to arbitrate." (Doc. 28, p. 227) (citing to *In re Managed Health Care Litigation*, 132 F.Supp.2d 989, 994-97 (S.D. Fla. 2000) (applying equitable estoppel, agency and third-party beneficiary theories), rev'd on other grounds, *In re Humana, Inc. Managed Care Litigation*, 333 F.3d 1247 (11th Cir. 2003). Additionally, equitable estoppel under Florida law only applies (3) "where a signatory to a written agreement must rely on the terms of the agreement in asserting its claims against the non-signatory." *Id.*

None of these estoppel scenarios remotely apply here. Lubin is not suing Starbucks based on any agreement, much less his wife's agreement with Starbucks. Doc. 28, p. 227. Likewise, there is no Starbucks' non-signatory affiliate being compelled to arbitrate in this case. *Id.* And Lubin is not relying on any agreement between his wife and Starbucks to assert his claims. *Id.* Further, the Amended Complaint's allegations do not rely in any way on the agreement between his wife and Starbucks. *Id.* No analysis of his wife's employment, or any agreement she entered into with Starbucks, is needed to make any determination regarding the

allegations in the Amended Complaint. *Id.* And contrary to Starbucks' arguments, Lubin is not suing to recover benefits under his wife's health plan.[4] *Id.*

Rather, Lubin seeks only to enforce his own statutory rights under 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, rights which are completely independent of his wife and her employment with Starbucks. *Id.* In fact, Lubin's claims did not arise until after his wife stopped working at Starbucks, and after he received the deficient COBRA notice from Starbucks. *Id.* Under these facts, Starbucks' equitable estoppel arguments failed in District Court. They still fail.

Much of the same is true as to Starbucks's third-party beneficiary arguments. Doc. 23, pp. 174-175. Importantly, both sides agree that Florida contract law applies. So, at the District Court, Lubin correctly argued that Florida Supreme Court precedent demonstrates why Starbucks' arguments fail. Doc. 23, pp. 174-175.

As to Starbucks' third argument, positing that Lubin's claims are somehow "derivative" in nature, Lubin asked the District Court to ignore cases and arguments raised for the first time in the Starbucks' reply brief. Doc. 28, p. 228. This included Starbucks' "derivative"-related arguments and case law, specifically *Eckel v.*

---

[4] Even if Lubin were making a claim for "benefits" under the Starbucks' health plan (which Lubin disputes), for the reasons set forth above in footnote 2, such a claim would, by definition, be excluded from the Starbucks' arbitration agreement. *See* Doc. 18-2, p. 148, for a complete copy of the Starbucks' arbitration agreement improperly seeks to enforce against Lubin. Paragraph 7 is the "Claims Not Covered by this Agreement" paragraph, which includes claims for benefits.

9

*Equitable Life Assur. Soc. of the U.S.*, 1 F. Supp. 2d 687, 688 (E.D. Mich. 1998). Doc. 28, p. 228.

Additionally, Lubin argued that even if considered, Starbucks' derivative arguments, including *Eckel*, should not alter the District Court's analysis. Doc. 28, p. 228. Most importantly, unlike in this case, in which Florida contract law clearly applies, *Eckel* makes no mention of Florida law. *Id.* Rather, *Eckel* is a Michigan federal case presumably applying Michigan contract law. *Id.*

Finally, when opposing the Starbucks' Motion to Compel Arbitration, Lubin also argued that the District Court should reject the Starbucks' delegation clause arguments. Doc. 23, pp. 177-178. Starbucks recently lost this very argument in *Wilson v. Starbucks Corp.*, 385 F. Supp. 3d 557, 562 (E.D. Ky. 2019). Notably, the arbitration agreement and delegation clause from Wilson are identical to those Starbucks seeks to enforce here. *Id.* (Footnote omitted). The only difference is that unlike in the plaintiff in the *Wilson* case, who worked for Starbucks and was party to the arbitration agreement, Lubin is not a signatory to the arbitration agreement Starbucks seeks to enforce against him, further supporting denial of Starbucks' delegation arguments. *Id.*

### c.    The District Court Heard Oral Argument from Counsel.

Besides considering multiple rounds of briefing from both parties, *see* Doc. 18, pp. 89-111; Doc. 23, pp. 163-180; Doc. 27, pp. 216-223; Doc. 28, pp. 224-230,

10

on December 21, 2020, the District Court also heard lengthy oral argument from counsel.  Appendix, pp. 183-215.

### d.  The District Court's Order Denying, In Part, Starbucks' Motion.

The District Court granted Starbucks' Motion to Compel Arbitration as to Torres but denied the Motion as to Lubin.  Doc. 33, pp. 236-251.  The Order began by explaining Starbucks was arguing, pursuant to the FAA, that it (the District Court) must compel arbitration "in accordance with the terms of the agreement."  Doc. 33, p. 244 (citing 9 U.S.C. § 40).  However, at the onset of its Order the District Court quickly pointed out that "Lubin is not a party to any arbitration agreement with [Starbucks].  And absent an agreement to arbitrate, 'a court cannot compel the parties to settle their dispute in an arbitral forum.'" Doc. 33, p. 244 (citing to *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (other citations omitted).

Next, the District Court's Order carefully analyzed (and rejected) each of the three core arguments raised by Starbucks: 1) equitable estoppel; 2) third-party beneficiary; and, finally, 3) a "derivative" claim theory.

The District Court first considered the equitable estoppel arguments raised by Starbucks seeking to enforce the Arbitration Agreement against Lubin as a non-party.  Doc. 33, pp. 245-247.  The District Court began this part of its analysis by

pointing out that "[e]quitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose." Doc. 33, p. 245 (citing to *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1342 (11th Cir. 2012)). The District Court went on to hold that it "… agrees with Lubin that he is not 'suing Starbucks based on any agreement, much less his wife's agreement with Starbucks. The complaint alleges that the COBRA notice provided to Lubin was deficient—as it failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4—and caused Lubin economic injuries in the form of lost insurance, higher insurance premiums, and unpaid medical bills.' " Doc. 33, p. 246. (Internal citations omitted).

Additionally, the District Court reasoned that Lubin's claims are grounded in his statutory right to be notified of the right to continued healthcare coverage after the termination of his wife's employment with Starbucks. Doc. 33, p. 246. Pursuant to § 1166(a)(4), "the administrator shall notify in the event of a qualifying event ... any qualifying beneficiary ... of such beneficiary's rights under this subsection." Section 1166(a) further provides that "[n]otice must be provided in accordance with the regulations prescribed by the Secretary." Doc. 33, p. 246 (citing to *DeBene v. BayCare Health Sys., Inc*., 688 F. App'x 831, 839 (11th Cir. 2017)). It, was, therefore clear to the District Court "that as a 'qualifying beneficiary,' Lubin's

12

claims are based not on the employment contract between his wife and Defendant, but on his own rights."   Doc. 33, p. 247.

Ultimately, when analyzing Starbucks' estoppel arguments, the District Court held that it "cannot compel Lubin to arbitration, in light of the fact that Lubin is not seeking to enforce any contractual right. As such, Defendant's effort to compel arbitration based on the doctrine of equitable estoppel fails."  Doc. 33, p. 247.

The District Court reached a similar conclusion when analyzing Starbucks' third-party beneficiary claims as to Lubin.  Doc. 33, pp. 247-248.  Specifically, in its Order the District Court explained that "[Starbucks] also argues that Lubin should be compelled to arbitrate his claims against it based on Lubin's status as a third-party beneficiary of his wife's contract with [Starbucks]."  Doc. 33, pp. 247.  In rejecting this argument, the District Court explained that, "the third-party beneficiary doctrine enables a non-contracting party to enforce a contract against a contracting party— not the other way around." Doc. 33, pp. 247 (citing to *Mendez v. Hampton Ct. Nursing Ctr*., LLC, 203 So. 3d 146, 149 (Fla. 2016), and *Espinosa v. Sparber, Shevin, Shapo, Rosen & Heilbronner*, 612 So.2d 1378, 1380 (Fla. 1993), and *Shingleton v. Bussey*, 223 So.2d 713, 715 (Fla. 1969)).  In fact, as the District Court also correctly pointed out, "Florida courts will not enforce an arbitration against a third-party who does not bring suit as a third-party beneficiary for the benefit of a contract signed by others. *Id*. at p. 149.

13

Next, as to Starbucks' third-party beneficiary arguments, because Florida contract law controls, the District Court correctly relied upon Florida Supreme Court precedent—specifically *Mendez v. Hampton Ct. Nursing Ctr.*, LLC, 203 So. 3d 146, 149 (Fla. 2016). The District Court agreed with Lubin that *Mendez* applied. So should this Court. Specifically, the District Court held that, "[s]imilar to the case here, the defendant nursing home in *Mendez* sought to enforce against plaintiff father, an arbitration clause in the contract between the nursing home and plaintiff's son. The Florida Supreme Court held the father was not bound by the arbitration clause where his estate sued for negligence and statutory violations—not to enforce the son's contract with the nursing home." Doc. 33, pp. 247-248. (Internal citations omitted). The District Court went on to explain that:

> As in *Mendez*, Lubin is not suing to enforce his wife's contract with Defendant. **This compels the same result the [Florida] Supreme [C]ourt reached in that case, that Lubin—a third party beneficiary—is not bound by the arbitration provision contained in the contract between Defendant and his wife**. The third-party beneficiary doctrine does not permit two parties to bind a third—without the third party's agreement—merely by conferring a benefit on the third party. Defendant therefore cannot compel Lubin to arbitrate this case as a third-party beneficiary of the contract with Lubin's wife.

Doc. 33, p. 248. (Internal citations omitted). (Emphasis added).

The District Court's Order next turned to Starbucks' derivative claim argument, specifically holding it "lacked merit." Doc. 33, pp. 248. First, the District Court held that the argument was raised for the first time in a reply brief and, as

14

such, was not properly presented to the District Court. Doc. 33, pp. 248 (citing to

*Vinson v. Koch Foods of Alabama, LLC*, 735 F. App'x 978, 982 (11th Cir. 2018),

and *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357,

1364 (11th Cir. 2006)).  But, despite not being properly before the court, the District

Court still considered the argument, ultimately holding that "[Starbucks'] argument

that the claim is derivative lacks merit. As Lubin notes in the reply, he seeks only to

enforce his own statutory rights under 29 U.S.C. § 1166(a) and 29 C.F.R. §

2590.606-4. Because Lubin is a qualified beneficiary entitled to the prescribed

notice, his claims are not derivative of his wife's."  Doc. 33, pp. 248.

The District Court concluded by holding that Lubin is not seeking to enforce

the contract between his wife and Defendant.  Doc. 33, pp. 248.  Instead, according

to the District Court's carefully-reasoned Order, Lubin's claims are premised on his

own statutory rights pursuant to 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4.

*Id*.  Ultimately, therefore, the District Court determined Starbucks cannot compel

Lubin to arbitrate the claims raised in this lawsuit.  *Id*.  This Court should affirm the

District Court's Order, as explained further below.

### 3.    __Standard of Review__.

Starbucks seeks reversal of the District Court's Order denying its Second

Motion to Compel Arbitration. As such, District Court's Order is subject to a *de*

*novo* standard of review. *Carter v. Doll House II, Inc.,* 608 F. App'x 903, 903 (11th

Cir.2015) (citing *Jenkins v. First Am. Cash Advance of Ga., LLC,* 400 F.3d 868, 873(11th Cir. 2005)).  On the other hand, findings of fact made by the District Court are accepted by the appellate court which are not clearly erroneous. *Multi–Fin. Sec. Corp. v. King*, 386 F.3d 1364, 1366 (11th Cir. 2004).  Additionally, the district court's decision not to apply equitable estoppel to non-signatory to compel arbitration is reviewed for abuse of discretion. *In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002), rev'd on other grounds sub nom. *PacifiCare Health Sys., Inc. v. Book,* 538 U.S. 401 (2003).

## SUMMARY OF ARGUMENT

Lubin never agreed to arbitrate his COBRA claims against Starbucks.  In fact, he is not party to the arbitration agreement Starbucks is attempting to invoke against him.  Rather, the agreement is between Starbucks and his wife (a former Starbucks employee).  Lubin's claims fall outside of that agreement.  As attested to in Lubin's declaration (*see* Doc. 23-1, p. 180), he never saw the Starbucks' arbitration agreement, never signed it, and certainly never agreed to it.  Starbucks presents not a modicum of evidence suggesting otherwise.  Under Florida contract law, which governs here, "[o]ne who has not agreed to be bound by an arbitration agreement cannot be compelled to arbitrate." *Liberty Commc'ns, Inc. v. MCI Telecommunications Corp*., 733 So. 2d 571, 573 (Fla. 5th DCA 1999).  Because Lubin never agreed to be bound by the Starbucks arbitration agreement, he cannot

16

be compelled to arbitration under an estoppel theory. Starbucks' equally-strained third-party beneficiary and derivative arguments fail for many of the same reasons, and based on the independent reasons set out below.

In sum, Lubin respectfully asks that this Honorable Court affirm the denial of Starbucks' Second Motion to Compel Arbitration.

## **ARGUMENT**

## I.    THE FAA DOES NOT SUPPORT COMPELLING ARBITRATION OF LUBIN'S CLAIM.

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of arbitration agreements." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc*., 251 F.3d 1316, 1322 (11th Cir. 2009) (*citing Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). While the Federal Arbitration Act ("FAA") codifies a "strong federal preference for arbitration of disputes," *Musnick v. King Motor Co*., 325 F.3d 1255, 1258 (11th Cir. 2003), Supreme Court and Eleventh Circuit precedent make clear that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not so agreed so to submit.'" *Ivax Corp. v. B. Braun of Am., Inc*., 286 F.3d 1309, 1315 (11th Cir. 2002) (*quoting AT & T Techs., Inc. v. Commc'n*, 475 U.S. 643, 648 (1986)). Such is the case here, as explained further below.

17

Like most employers seeking to enforce arbitration agreements against former employees, in its Initial Brief Starbucks invoked the antiquated pro-arbitration maxim from *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). Starbucks' Brief, p. 21 (citing to *Moses*). According to the Starbucks' Brief, *Moses* requires that when interpreting arbitration agreements under the FAA, federal courts exercise an overwhelming presumption in favor of arbitration, and "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." Starbucks' Brief, p. 21 (citing to *Moses*) (other citations and quotations omitted).

But just a few weeks ago, in *Calderon v. Sixt Rent a Car, LLC*, No. 20-10989, 2021 WL 2946428, at *1 (11th Cir. July 14, 2021), this Court rejected a similar attempt by Sixt Rental Car to invoke against Orbitz (the online travel agency) the same *Moses* canon of construction cited by Starbucks, namely that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." This Court held in *Calderon* the *Moses* canon emanated from the FAA and, thus, applied only to agreements within the coverage of the FAA. *Calderon* at *6. However, this Court also held that the FAA only applies to controversies that arise out of the contract containing the arbitration agreement. *Id.* Because the dispute between Sixt and Orbitz didn't arise out of the contract at issue on appeal, this Court

18

in *Calderon* held that strong pro-arbitration canon from *Moses* equally didn't apply. *Calderon*, at *7.

But there's more. Judge Newsom issued a concurrence to his own *Calderon* opinion, calling the *Moses* rule of construction "among the most dubious of the so-called 'substantive' interpretive canons." *Calderon*, at *7. In his concurrence opinion Judge Newsome stated that "many courts almost simultaneously developed the same pro-arbitration canon through an aggressively purposivist reading of the FAA." *Calderon*, at *10. Judge Newsome went on to correctly state that the *Moses* canon is divorced from the actual text of the FAA because "[the FAA] says nothing about giving arbitration agreements favored status or treatment. Indeed, I'm not aware of a single straight-faced attempt to defend Moses H. Cone as an interpretation of the FAA's text." *Calderon*, at *13. Finally, Judge Newsome's concurrence is aptly summarized by the following quote from his opinion, "[s]o far as I can tell, the Moses H. Cone canon is just made up. We should rethink it." *Calderon*, at *8.

Based on the majority's holding in *Calderon*, coupled with Judge Newsome's thoughtful *Calderon* concurrence opinion, the pro-arbitration *Moses* arguments found in Section I of the Starbucks' Brief should be rejected entirely. Just like the dispute between Sixt and Orbitz in *Calderon* didn't arise out of the contract at issue on appeal, nor does the dispute between Lubin and Starbucks arise out of any agreement the two shared with each other. Rather, the dispute in this case arises

19

from Lubin's independent right to receive a COBRA notice that complies with the law.  Such rights have nothing whatsoever to do with the arbitration agreement between Lubin's wife and Starbucks.  One has nothing to do with the other.  And while the "principal purpose" of the FAA is to ensure "that private arbitration agreements are enforced according to their terms,"[5] here no private arbitration agreement exists between Lubin and Starbucks. Thus, there is no agreement for the Court to enforce according to its terms.  This Court should reject Starbucks' FAA-related arguments.

## II.    LUBIN'S CLAIMS ARE NOT COVERED BY HIS WIFE'S AGREEMENT.

Just as no valid agreement exists between Lubin and Starbucks, Lubin's COBRA claims are <u>not</u> covered by his wife's arbitration agreement.  Rather, the arbitration clause covers only claims brought by Lubin's wife, not him.  *See* Doc. 18-2, p. 148.  Florida courts have long held that contractual arbitration is only mandated for controversies or disputes which the parties have agreed to submit to arbitration. *Pacemaker Corp. v. Euster*, 357 So.2d 208 (Fla. 3d DCA 1978); *Painewebber, Inc. v. Hess*, 497 So.2d 1323 (Fla. 3d DCA 1986); *All American Semiconductor, Inc. v. Unisys Corp.*, 637 So.2d 59 (Fla. 3d DCA 1994).

---

[5] *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Lubin never agreed to submit any of his claims to arbitration. In fact, the controlling language of the agreement specifically uses "I" and "me" and "my employment", all of which refer exclusively to Lubin's wife, not him. Doc. 18-2, p. 148. The agreement begins with: "Starbucks and **I** agree to use binding individual arbitration to resolve any "Covered Claims" that arise between **me** and Starbucks…." Doc. 18-2, p. 148. (Emphasis added). It goes on to specifically limit "covered claims" as follows: "Covered Claims" are those brought under any statute, local, ordinance, or common law ***relating to my employment***…." *Id.* (Emphasis added). Clearly, these references relate exclusively to Lubin's wife, a signatory to the agreement, not him.

It is equally clear that the Starbucks' arbitration agreement covers only disputes between Lubin's wife and Starbucks related to her employment. It has nothing to do with him. He is not party to it, never referred to in it, and not incorporated by reference (something Starbucks could have easily done in the agreement). *See* Doc. 18-2, p. 148. In fact, "Covered Claims" are specifically defined by the Starbucks' arbitration agreement as follows: " 'Covered Claims' are those brought under any statute, local, ordinance, or common law ***relating to my employment***, including those concerning any element of compensation, harassment, discrimination, retaliation, recovery of bonus or relocation benefits, leaves of absence, accommodations, or termination of employment." Doc. 18-2, p. 148.

21

(Emphasis added). Simply put, unlike his wife, Lubin did not work at Starbucks, making the agreement wholly inapplicable to his COBRA claims. The "I" and "my employment" refer to his wife, not Lubin. *Id*.

In the Amended Complaint, Lubin merely seeks to recover statutory damages due to the legally deficient COBRA notice he received after his wife's job at Starbucks ended, in addition to equitable relief, fees, and costs. Doc. 15, 86-87. None of these are covered by the agreement. Starbucks tried to overcome this hurdle by highlighting what it hopes the Court will treat as a catch-all phrase, specifically "…concerning any element of compensation." Doc. 18, p. 105. But this argument by Starbucks stretches the plain language of the agreement beyond any reasonable application of fact or law. It also contradicts the prayer for relief from the Amended Complaint (*see* Doc. 15, pp. 86-87), which makes clear Lubin is seeking only statutory damages, equitable relief, fees, and costs. These simply don't relate to compensation or benefits earned by his wife while working for Starbucks.

Additionally, Lubin's wife's employment ended in February of 2019. Doc. 15, p. 81, ¶ 39. But Starbucks did not mail him the deficient COBRA notice giving rise to his claims in this case until ***after*** her employment ended. Doc. 15, p. 81, ¶ 42. Thus, Lubin's claims simply have nothing to do with her employment and, thus, are not covered by the agreement.

Finally, Starbucks drafted the agreement and the arbitration clause. Under Florida law, the rules of construction require that contracts be construed against the drafter. *Vargas v. Schweitzer-Ramras*, 878 So. 2d 415, 417 (Fla. 4th DCA 2004). If Starbucks wanted to incorporate employee family members (like Lubin) into its arbitration agreement—specifically when family members became covered under the Starbucks' health plan of a spouse/employee—Starbucks easily could have done so. It did not. As such, Lubin should not be unilaterally grafted into his wife's agreement with Starbucks. Under these facts and Florida law, Lubin should "not be forced into arbitration against [his] will." *Nestler-Poletto Realty, Inc. v. Kassin*, 730 So. 2d 324, 326 (Fla. 4th DCA 1999).

## III. THE DISTRICT COURT CORRECTLY HELD THAT ESTOPPEL DOES NOT WARRANT COMPELLING ARBITRATION OF LUBIN'S CLAIM.

Because no agreement exists between Starbucks and Lubin, Starbucks attempts to apply the agreement to Lubin based on principles of estoppel, Lubin's standing as a third-party beneficiary of the agreement, and under a derivative claim theory. Each of these arguments fail.

Beginning with estoppel, under Florida law a non-signatory may typically only be bound to arbitrate under five very limited theories: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel. *Johnson v. Pires*, 968 So.2d 700, 701 (Fla. 4th DCA 2007) (*citing Thomson-CSF*,

23

*S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2nd Cir. 1995)); *see MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). Starbucks argues that equitable estoppel applies under Florida law. Starbucks is wrong.

The theory of equitable estoppel under Florida law only binds a non-signatory to arbitration (1) "where a non-signatory plaintiff sues a signatory defendant, based upon an agreement that contains an arbitration clause between the defendant and a third-party to whom the plaintiff is affiliated," or, (2) where a company's "non-signatory affiliate is compelled to arbitrate." *In re Managed Health Care Litigation*, 132 F.Supp.2d 989, 994-97 (S.D. Fla. 2000) (applying equitable estoppel, agency, and third-party beneficiary theories), rev'd on other grounds, *In re Humana, Inc. Managed Care Litigation*, 333 F.3d 1247 (11th Cir. 2003). Additionally, equitable estoppel applies (3) "where a signatory to a written agreement must rely on the terms of the agreement in asserting its claims against the non-signatory." *Id*. at 995 (*citing MS Dealer Service Corp. v. Franlin*, 177 F.3d 942, 947 (11th Cir. 1999)).

None of these estoppel scenarios remotely apply here. Lubin is not suing Starbucks based on any agreement, much less his wife's agreement with Starbucks. Likewise, there is no Starbucks' non-signatory affiliate being compelled to arbitrate in this case. And Lubin is not relying on any agreement Starbucks and his wife entered into to assert his claims. Further, the Amended Complaint's allegations do not rely on the agreement between his wife and Starbucks. No analysis of his wife's

24

employment, or any agreement she entered into with Starbucks, is remotely necessary to make any determinations regarding the allegations in the Amended Complaint.  In other words, Lubin's claims against Starbucks are not founded in, do not arise from, and are not related to his wife.  In fact, his claims did not arise until *after* she stopped working at Starbucks, and *after* he received the deficient COBRA notice from Starbucks.

"In essence, equitable estoppel precludes a party from claiming the benefit of some of the provisions of a contract while simultaneously attempting to avoid the burden that some other provisions of the contract impose." *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335 (11th Cir. 2012). By recognizing that the linchpin for the application of equitable estoppel is to prevent unfairness, it becomes clear Starbucks has failed to provide any reason to invoke the doctrine in this case. There is nothing about Lubin's conduct or claims that somehow makes it unfair for him, as a non-party to any arbitration agreement with Starbucks, to assert his rights in court against Starbucks. *See Drayton v. Toyota Motor Credit Corp.*, No. 3:16-CV-46-J-39JBT, 2016 WL 8928704, at *3 (M.D. Fla. July 11, 2016), report and recommendation adopted, No. 3:16-CV-46-J-39JBT, 2016 WL 8929258 (M.D. Fla. Nov. 10, 2016), *aff'd*, 686 F. App'x 757 (11th Cir. 2017).

In fact, this Court recently analyzed the equitable estoppel doctrine in *Lavigne v. Herbalife, Ltd.*, No. 18-14048, 2020 WL 4342671, at *5 (11th Cir. July 29, 2020),

25

when it explained that "…in deciding whether equitable estoppel is appropriate, we must remember the purpose of the doctrine, which is to prevent the plaintiff from "hav[ing] it both ways." *Id*. at 543 (*quoting Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 528 (5th Cir. 2000)). "[T]he signatory 'cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Id*. (*quoting Grigson*, 210 F.3d at 528).

Consistent with the *Lavigne* holding, Lubin is <u>not</u> seeking to have it both ways. He is not suing on any agreement he had with Starbucks, or even that his wife had with Starbucks. Rather, Lubin is suing for COBRA violations which occurred after his wife's employment with Starbucks ended. Moreover, Lubin's claims relate exclusively to a deficient COBRA which he received—not his wife—after he experienced the required qualifying event mandating Starbucks provide to him sufficient notice of his rights under COBRA. Because federal law outside of the arbitration agreement required Starbucks to provide a compliant COBRA notice to Lubin, then the breach of that duty by Starbucks flows from that law—not the arbitration agreement. Therefore, nothing about Lubin's COBRA claims against Starbucks warrant application of the doctrine of equitable estoppel.

26

## IV.   SIMILARLY, THE DISTRICT COURT PROPERLY REJECTED STARBUCKS' THIRD-PARTY BENEFICIARY ARGUMENTS.

Besides equitable estoppel, Starbucks also argues it is entitled to enforce under Florida law the arbitration agreement against Lubin under a third-party beneficiary theory.  Starbucks' Brief, pp. 33-35.

However, binding Florida precedent demonstrates otherwise.  In *Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146 (Fla. 2016), the Florida Supreme Court discussed the law of third-party beneficiaries and when they can be bound by an arbitration agreement. 203 So.3d at 148–50. The *Mendez* Court explained, "The third-party beneficiary doctrine [under Florida law] does not permit two parties to bind a third—without the third party's agreement—merely by conferring a benefit on the third party." *Id*. at 149. Notably, the *Mendez* Court also distinguished previous Florida case law by explaining that a third-party beneficiary cannot sue to enforce a contract while simultaneously arguing it is not bound by its terms. *Id*. Most importantly, the Florida Supreme Court held that a third-party beneficiary who does not sue to enforce the contract is not bound by the terms to which she did not agree. *Id*.

The *Mendez* Court also draws a careful distinction between claims to enforce a contract and claims for other violations. In *Mendez*, the plaintiff was a nursing home resident whose son entered into an agreement with the nursing home for his

27

father's care. *Id*. at 147. The plaintiff later sued the nursing home for negligence and statutory violations after the plaintiff's eye was removed because of an infection. *Id*. at 147–48. The *Mendez* Court held that the plaintiff's claims for negligence and statutory violations were not premised upon the contract signed between the nursing home and his son. *Id*. at 149.

In accordance with *Mendez*, whether Lubin—as a husband of a former Starbucks employee—is bound by the arbitration agreement depends on whether his claims are somehow premised on his wife's agreement with Starbucks. Clearly, they are not. His claims are not premised on the agreement between Starbucks and his wife, nor are they in any way related to his wife's employment. Rather, his claims are premised on a deficient COBRA notice he received after his wife no longer worked for Starbucks. Under these facts, Lubin is clearly ***not*** bound to arbitrate under Florida law.

And tracking the Florida Supreme Court's decision in *Mendez*, because Lubin's claims for violation of COBRA are not claims to enforce the agreement between his wife and Starbucks, under *Mendez* his COBRA claims cannot bind him to the arbitration provision in his wife's agreement with Starbucks. *See also Ray v. NPRTO Fla., LLC,* 743 F. App'x 955, 956 (11th Cir. 2018)(denying motion to compel arbitration under similar third-party beneficiary theory); *Rolls-Royce, PLC v. Royal Caribbean Cruises Ltd.*, 960 So. 2d 768, 770 (Fla. 3d DCA 2007).

28

## V.    THE DISTRICT COURT CORRECTLY HELD THAT STARBUCKS' DERIVATIVE ARGUMENTS LACK MERIT.

As a threshold matter, the District Court was entitled, in its discretion, to ignore entirely cases and arguments raised for the first time in a reply brief.  This included Starbucks' "derivative"-related arguments and case law, including *Eckel v. Equitable Life Assur. Soc. of the U.S.,* 1 F. Supp. 2d 687 (E.D. Mich. 1998), Starbucks' Brief, pp. 18, 27, 29, 32.   Nonetheless, despite the argument being raised late, the District Court nevertheless considered Starbucks' "derivative"-related arguments, ultimately holding they "lacked merit."   Those same arguments by Starbucks got no better on appeal.

First, just as it did at the District Court, Starbucks makes much of *Eckel* (Starbucks' Brief, pp. 18, 27, 29, 32), but it should not alter this Court's analysis.  Most importantly, *Eckel* does <u>not</u> apply Florida contract law as the parties must do here.   Rather, *Eckel* is a Michigan federal case with no mention of Florida whatsoever—*Eckel* certainly did not apply Florida contract law, making it completely irrelevant to this case.

 Additionally, the non-signatory issue which Starbucks' supplemental brief attempts to paint as the holding from *Eckel* is merely dicta from a footnote.  *See* Eckel, 1 F. Supp. 2d at 688, fn. 1.  The true holding in *Eckel* is related to ERISA preemption, not estoppel or third-party beneficiary principles.  *Id.*, at 688.  Not only

that, in *Eckel* one of the two spouses had already initiated an arbitration proceeding. *Id*. Thus, it made no sense for the court in *Eckel* to split the two spouse's claims into separate forums, particularly when one spouse had already commenced arbitration. *Id*.

The facts here are very different. Here, Lubin's wife—the true signatory to the Starbucks' arbitration agreement—is *not* pursuing a claim against Starbucks. Thus, there is no ongoing spouse companion arbitration matter that would need to be pursued simultaneously with this litigation. *Eckel* is easily distinguishable, as are the other cited cases by Starbucks.

For example, much of the same is true for Starbucks' misplaced reliance on *Teel v. Aaron's, Inc*., No. 3:14-cv-640-J-32PDB, 2015 WL 1346846, at **3–6 (M.D. Fla. Mar. 24, 2015).  Starbucks' Brief, p. 26, 40.  Unlike in this case, in *Teel* the defendant rental company sought to enforce the arbitration agreement included in two prior lease order forms to a dispute arising from a subsequent furniture lease for which there was no lease agreement.  *Teel*, at *5. The court evaluated a variety of factors, most of which weighed in favor of holding the arbitration agreement applied to the subsequent rental. *Id*. at **4–5.  It was evident from the *Teel* lease order forms, however, that the arbitration agreement covered all lease agreements between the parties, whether they were in writing, and applied to the same subject matter, the rental of furniture. *Id*. As to Lubin's cause of action in the present case, the

30

arbitration agreement expressly applies only to his wife, not him.  *Teel* is, thus, very different.

Additionally, *Gomez v. Allied Pros. Ins. Co.*, 457 F. Supp. 3d 1351, 1360 (S.D. Fla. 2020), cited by Starbucks (*see* Starbucks' Brief, pp. 19, 28, 35, 39-40), is easily distinguishable.  Unlike here, in the *Gomez* case the plaintiff readily acknowledged he was, in fact, a third-party beneficiary under the insurance policy he was making a bad faith claim under.  *Gomez*, 457 F. Supp. 3d at 1360.  Also, unlike the statutory rights which Lubin's claims against Starbucks arise, which are wholly separate from any rights conferred under his wife's agreement, the plaintiff in *Gomez* sought indemnity benefits and payment of the outstanding judgment under the same policy he disavowed.  *Id*.  In fact, none of what happened in *Gomez* happened here. Contrary to the facts in *Gomez*, in this case Lubin is not making a claim based on the terms and conditions of his wife's agreement with Starbucks.  Rather, his rights exist completely independent of his wife and her agreement with Starbucks.  Thus, *Gomez* is simply not helpful.  It should not guide the Court's analysis.

Starbucks' Brief cites to another easily distinguishable insurance case, *Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295, 1302 (11th Cir. 2014).  Starbucks' Brief, p. 34.  Much like in *Gomez*, in *Kong*, the plaintiff sought to enforce a stipulated tort judgment she received against an individual insured by the defendant insurance company. *Id*. at 1298. The stipulated judgment assigned to the *Kong* plaintiff all of

the insured's causes of action against the insurance company. *Id*. The *Kong* defendant moved to compel arbitration. *Id*. The *Kong* defendant argued that its policy with the insured contained an arbitration clause, and because the insured assigned her rights against the defendant to the plaintiff, the *Kong* plaintiff was bound by that clause. *Id*. The court in *Kong* held that Florida law compels arbitration on an assignee even if the assignee does not assent to the arbitration provision in the assigned contract. *Id.*

But that did not happen in this case. This matter does not involve an assignee, much less one seeking to compel (or avoid) arbitration. There simply is not assignment in this case. Further, just like *Gomez*, this case is distinguishable from *Kong* because Lubin is not making a claim under wife's agreement with Starbucks. Instead, Lubin's rights exist apart from both his wife and her agreement with Starbucks. Such facts make *Kong* distinguishable.

Moreover, just as Starbucks raised its derivative arguments late in the District Court, on appeal Starbucks improperly raises for the first-time arguments disputing Lubin's entitlement to collect statutory damages. Starbucks' Brief, pp. 18, 31 (citing to *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1344 (11th Cir. 2001)).

First, issues raised for the first time on appeal are deemed waived. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330-31 (11th Cir. 2004) (issues raised for the first time on appeal are deemed waived). Second, *Wright* is distinguishable

32

because, unlike here, *Wright* did not involve a COBRA claim arising under the final DOL regulations promulgated in 2004.[6]  Unlike in *Wright*, the COBRA violations in this case arose chiefly under 29 C.F.R. § 2590.606-4, as evidenced by the fact that the Amended Complaint focuses on Starbucks' violation of 29 C.F.R. § 2590.606-4.  *See* Doc. 15, pp. 80-81.  In *Wright*, on the other hand, the claim arose exclusively under 29 U.S.C. § 1166.  And, while this case also involves that section of ERISA, the 29 C.F.R. § 2590.606-4 notice requirements (and allegations related thereto from the Amended Complaint), arguably distinguishes this case from *Wright*.  Finally, Plaintiff's entitlement to statutory damages is immaterial to the discrete issues raised in this appeal.  To be sure, 29 U.S. Code § 1132(a)(1)(A) empowers Lubin, even as a beneficiary, to bring a civil action to enforce his rights under ERISA.  *See* 29 U.S. Code § 1132(a)(1)(A) ("Persons empowered to bring a civil action.  A civil action may be brought— (1) by a participant or ***beneficiary***.")  (Emphasis added).  Thus, *Wright* is not relevant to this appeal.

Likewise, Starbucks' reliance on *Laizure v. Avante at Leesburg, Inc.*, 109 So.3d 752, 754 (Fla. 2013) is equally misplaced.  Starbucks' Brief, p. 19, 32, 38-39.

---

[6] *See Valdivieso v. Cushman & Wakefield, Inc.*, No. 8:17-CV-118-T-23JSS, 2017 WL 2191053, at *2 (M.D. Fla. May 18, 2017) ("In 2004, the Secretary of Labor promulgated a notice regulation, Section 2590.606–4, which includes no "good-faith" defense. Because a "good-faith" attempt to comply with the law no longer excuses an employer's purported breach of the notice requirement, the pre-2004 decisions are inapposite.")

*Laizure* was a wrongful-death action brought by a personal representative standing in the shoes of the decedent, in which the court held the personal representative was required to abide by the arbitration agreement entered into by the decedent. That is very different from this scenario. Here Lubin seeks only to enforce his own statutory rights under 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, rights which are completely independent of his wife and her employment with Starbucks.

## VI. LIKE THE ARBITRATION AGREEMENT, THE DELEGATION PROVISION IS UNEFORCEABLE.

With respect to delegation clauses, the United States Supreme Court has qualified that courts "should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (citations omitted); (alterations deleted).

Therefore, the usual presumption—that any doubts concerning arbitration should be resolved in favor of arbitration (which Lubin has already challenged above)—is reversed. *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) ("[W]here the ambiguity relates to who determines arbitrability—that is, the arbitrability of the question of arbitrability—the [FAA's] presumption is reversed and a court ordinarily decides the question.") To the contrary, Florida places the "heavy burden" of proving that a non-signatory is an intended third-party beneficiary

34

of a contract on the non-signatory seeking enforcement. *FL-7, Inc. v. SWF Premium Real Estate, LLC*, 259 So. 3d 285, 287 (Fla. 2d DCA 2018), reh'g denied (Nov. 16, 2018). Thus, "the issue of arbitrability may only be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Bell*, 293 F.3d at 566.

Starbucks' Brief erroneously argues that the District Court erred in failing to enforce the binding delegation provision. Starbucks' Brief, pp. 23-31. But, again, Lubin respectfully submits Starbucks is wrong. In fact, the Starbucks' arbitration agreement expressly excludes "(c) actions to enforce this Agreement, compel arbitration, or enforce or vacate an arbitrator's award under this Agreement." Doc. 18-2, p. 148. In this context, the word "action" is best understood as a civil judicial proceeding. *See Action*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "action" as "a civil or criminal judicial proceeding."). Thus, the Starbucks' arbitration agreement expressly excludes "[a civil] action [ ] to enforce this [arbitration] Agreement" or a civil action to "compel arbitration" from claims covered by the arbitration agreement.

Starbucks recently lost this very argument in *Wilson v. Starbucks Corp.*, 385 F. Supp. 3d 557, 562 (E.D. Ky. 2019). Notably, the arbitration agreement and

delegation clause from *Wilson* are identical to those Starbucks seeks to enforce here.[7] The only difference is that unlike in the plaintiff in the *Wilson* case, who actually worked for Starbucks and was party to the arbitration agreement, Lubin is not a signatory to the arbitration agreement Starbucks seeks to enforce against him.

Initially, as the *Wilson* court pointed out, "the delegation provision in the Starbucks employment contract appears to require submission of questions or applicability and enforceability of the arbitration provision to the arbitrator. But 'courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Wilson v. Starbucks Corp.*, 385 F. Supp. 3d 557, 562 (E.D. Ky. 2019) (internal citations omitted). But, as the *Wilson* court explained, contractual provisions in the Starbucks agreement undermine the delegation of applicability and enforceability issues to the arbitrator for the exact reasons Lubin has argued above. More specifically, the Starbucks' arbitration agreement expressly excludes "[a civil] action [ ] to enforce this [arbitration] Agreement" or a civil action to "compel arbitration" from claims covered by the arbitration agreement. In other words, the Starbucks' agreement expressly ***excludes*** delegating the gateway issue or arbitrability to the arbitrator. Thus, the issue is properly decided by the Court.

---

[7] *Compare Wilson v. Starbucks Corp.,* (E.D. Ky. Case: 5:19-cv-00087-JMH)(Doc. 6-1, pp. 15-17) *with* Doc. 18-2, p. 148.

36

Ultimately, the court in *Wilson* determined that the Starbucks' delegation clause and the exclusion clause contradict one another and create ambiguity pertaining to whether the parties agreed to submit initial questions of arbitrability, including questions of applicability and enforceability of the arbitration clause, to the arbitrator. *Wilson*, 385 F. Supp. 3d at 562. On one hand, the court in *Wilson* pointed out that the Starbucks' delegation clause provides that the parties agreed to delegate threshold questions of arbitrability to the arbitrator. *Id.* But, on the other hand, the Starbucks' claim exclusion provision expressly excludes actions to enforce the arbitration agreement and actions to compel arbitration. *Id.* This inconsistency creates confusion about the intention of the parties at the time of contracting. *Id.*

"Since the arbitration agreement fails to provide clear and unmistakable evidence that the parties intended to arbitrate questions of enforceability or applicability of the arbitration provision in the context of a motion to compel arbitration, the Court [should] not assume that the parties intended to submit initial questions about arbitrability to the arbitrator." *Id.* (Cleaned up).

The same outcome is warranted here because, in fact, the agreements are the same. As a result, in this action to compel arbitration, just as in *Wilson*, the Court

37

should also decide initial questions pertaining to the enforceability and applicability of the arbitration provision.[8]

## **CONCLUSION**

For the reasons set forth above, this Court should affirm the District Court's Order.

Dated this 5th day of August, 2021.

Respectfully submitted,

/s/ *Brandon J. Hill*
**LUIS A. CABASSA**
Florida Bar Number: 053643
**BRANDON J. HILL**
Florida Bar Number: 37061
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gnichols@wfclaw.com

*Attorneys for Plaintiff-Appellee*

---

[8] Finally, it's worth noting that, although not raised by Starbucks in its Initial Brief, for the same reasons discussed at length above why Lubin's claims should not be forced into arbitration, Starbucks' class action waiver also does not apply. Starbucks cannot raise the issue for the first time on appeal in a reply brief. *Egidi v. Mukamai*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in a reply brief are deemed waived."). This Court should therefore uphold the District Court's decision permitting Lubin to move forward with his class action complaint, and reject Starbucks' attempt to compel him to arbitrate his claims individually.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, <u>TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

The undersigned certifies this document complies with the word limit of Federal Rule of Appellate Procedure 5(c)(1) because, excluding parts of the document exempted by Federal Rules of Appellate Procedure 5(c), 5(b)(1)(E) and 32(f), this document contains <u>8,799</u> words.

The undersigned also certifies this document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared using Microsoft Word 2019 in 14-point Times New Roman font.

Dated this 5th day of August, 2021.

/s/ *Brandon J. Hill*
**BRANDON J. HILL**

39

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of August, 2021, I electronically filed the foregoing Petition for Permission to Appeal with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the Court's CM/ECF system.

I further certify that on this same date, a true and correct copy of the foregoing Petition for Permission to Appeal has been sent by U.S. Mail and properly addressed to the persons whose names and addresses are listed below (courtesy copies were sent via email on this same day):

Sherril M. Colombo, Esq.
Stefanie Mederos, Esq.
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131

*Attorneys for Defendant-Appellant*

/s/ *Brandon J. Hill*
**BRANDON J. HILL**

40